## HARDING G. WOODWARD *vs.* LUCIUS NIMS.

Franklin.   Sept. 21, 1880. — Jan. 11, 1881.   COLT & MORTON, JJ., absent.

Monuments referred to as boundaries control courses and distances.
In a conveyance of a parcel of land by several metes and bounds, the omission of
  one boundary line is unimportant, if there is sufficient in other parts of the
  deed, as applied to the particular premises, to show the extent and limits of
  the parcel intended to be conveyed.

WRIT OF ENTRY to foreclose a mortgage upon the entire
tract of land shown on the plan, a copy of which is printed in
the margin,* and marked A and B.   Plea *nul disseisin*, and a

disclaimer of title as to lot B. The case was submitted to the Superior Court, and, after judgment for the tenant, to this court on appeal, on agreed facts, the material parts of which appear in the opinion.

*A. De Wolf,* for the demandant.

*G. M. Stearns & C. C. Conant,* for the tenant.

ENDICOTT, J. The question in this case is one of boundary, and a careful examination of the deeds affords a conclusive answer to the claim of the demandant.

In 1852 Paul Hildreth became the owner of both the lots delineated on the plan, and marked A and B respectively. Lot A was conveyed to him by the boundaries, courses and distances shown upon the plan; the sixth boundary being upon lot B, which is described as land formerly of Obed Hastings. Lot B was afterwards conveyed to him by the boundaries as they appear on the plan, and its boundary on lot A is described in the deed to be southerly from the road in a range of two oak trees and the line of Hildreth's land to land of Wells. These trees are marked upon the plan. The boundary line between the two lots is thus definitely determined by permanent monuments.

Quintus Allen seems to have acquired title to these lots, for in 1856 he conveyed them to James M. Munson in one deed by separate descriptions; wherein it appears that each lot is bounded on the other upon a line in the range of the two oak trees, and reference is made to the deeds to Paul Hildreth mentioned above. The description of lot A contains the same boundaries, courses, and distances as in the deed to Hildreth, and as shown upon the plan, except that the fifth boundary "W. 17° N. 10 r. 20 l." is omitted. No question is made that Munson became the owner of both lots, for each party claims, under him, the parcel in dispute between them.

Munson made three mortgages on these premises. The first was a mortgage of lot A to Geo. P. Metcalf, and the description in the deed follows the description in the deed from Allen, omitting, as in that deed, the fifth boundary, and making reference to the deeds to Hildreth, and the deed from Allen. This mortgage has been paid and discharged. In all these descriptions of lot A, it is said to contain five acres and forty-two rods.

Munson seems to have improved the property, and built a mill thereon, and it became known by the name of the Munson Meadow Machine Mill property; for in 1866 he made a second mortgage of lot A to Jas. P. Felton; and the description of the land included therein becomes important. It is described as " the real estate and property, situate in Greenfield aforesaid, and known as Munson's Meadow Machine Mill property, being fully described in a mortgage from Munson to Metcalf, recorded in the Franklin registry, book 215, page 118, to which reference is hereby made for description, together with all the machinery, fixtures, tools and implements used in the prosecution of the Machine Business which now are or may be used in said shop." It contains no other description, and is subject to the mortgage to Metcalf. This mortgage was assigned, and the assignee, under a power contained therein, sold the premises by auction, and they were duly conveyed in September 1877 to Lucius Nims, who was the purchaser. The third mortgage was made in 1868, and covers both lots in a general description. It was assigned in 1878 to the demandant.

The only question submitted, on the agreed facts, to the court below, was whether the tenant is entitled to hold all the land included in lot A.

The demandant contends that the deeds under which the tenant claims title do not give him the whole of lot A; that by reason of the omission of the fifth boundary line from the description in the mortgage to Metcalf, the boundary line " N. $21\frac{1}{2}°$ E. 22 r." passes along the dotted line, shown on the plan; and that the tenant can hold no land westerly of that line. But this is an impossible line, for it is directly in conflict with the monuments, boundaries and measurements named in the mortgage to Metcalf. It does not end at the road, but intersects and crosses the first boundary of lot A, about which there is no dispute; nor would it bound on land formerly of Hastings by the line of the two oak trees, as required by the Metcalf mortgage. Upon this construction of the deed, the last boundary named in the Metcalf mortgage, namely, six rods fifteen links on the highway, cannot be satisfied; for there then would be no boundary on the road, and no access to it for the tenant. It would also exclude the factories or shops, which are referred to in the

Felton mortgage as standing on the land therein conveyed, and would embrace much less than five acres and forty-two rods, which that mortgage purports to convey. Such a line is utterly inconsistent with the terms of the deed, as applied to the premises.

It therefore becomes necessary to find what monuments are described, and what courses and distances are called for in the Metcalf mortgage; and if a construction can be given to the mortgage which shall describe an entire lot, and which shall also answer the description of Munson's Meadow Machine Mill property, then we have the lot conveyed by the mortgage under which the tenant claims. There is no dispute between the parties as to the first four boundaries given in the Metcalf mortgage. The description begins at a point on the Shelburne Road, and thence by the several courses and distances, and bounding on the several estates of Newton, Phelps and Wells, as indicated on the plan. The lines of boundary abutting on the lands of other persons are thus far fixed by permanent monuments upon the outside lines of the land belonging to the tenant. We also find other well-established outside lines of boundary of this land. The deed calls for a boundary on the Shelburne Road, six rods and fifteen links in length, terminating at the point of starting, and also for a boundary twenty-one rods in length on land of Hastings, which is lot B, and on the line of the two oak trees.

It is clear that the tenant has a title to all the land included within these monuments, to wit, the estates of Newton, Phelps and Wells, the land formerly belonging to Obed Hastings, and the Shelburne Road. They form the outer limits of the estate conveyed, and in terms complete the whole circuit of lot A, except on the line between the end of the fourth boundary and the beginning of the sixth boundary, as shown on the plan. But it is not contended that Wells owns north of that line, or that Munson did not own all the premises within the lines of both lots; on the contrary, both parties claim under him, and it is found that he occupied and improved the same as the Munson Meadow Machine Mill property.

The failure to include the fifth boundary set out on the plan becomes therefore unimportant, as there is sufficient in other

parts of the deeds, as applied to these particular premises, to show that Munson conveyed by the Felton mortgage all his Machine Mill property which was included within the limits of lot A. The evidence therefore that it was omitted by mistake becomes wholly immaterial.                          *Judgment affirmed*