## CHARLES FLAGG *vs.* SAMUEL F. MASON.

Worcester.    Oct. 2, 1885. — Jan. 16, 1886.    FIELD & C. ALLEN, JJ.,
absent.

At the trial of a writ of entry, brought in 1884, it appeared that the demandant
claimed title under a deed, executed in 1863, which described the land conveyed
as bounded as follows: "Beginning at a corner of the premises conveyed, on
the road leading from O. to H.; thence N. 16° W. 127½ rods by land of P. to
stones at a corner; thence N. 54° E. 30 rods to stones; thence N. 53° E. 55 rods
to stones; thence N. 54° E. 24 rods and 18 links to a white-oak or corner;
thence S. 33° E. 37 rods to stones, the four last lines by land of grantor; thence
S. 50° E. 62 rods by land of W. to the aforesaid road at stones; thence by said
road 169 rods and 8 links to the first-mentioned bound." The deed also con-
veyed another lot, on the opposite side of the road, and described the whole as
containing by estimation 126 acres more or less. It further appeared, that the
lines on the land of P., on the road, and on the land of W., were not in dispute;
and that there were monuments at or near most of the points indicated by the
courses and distances between the established boundaries. It further appeared,
that the line " S. 33° E. 37 rods to stones " was not long enough, by about 850
feet, to reach to W.'s land. There was also evidence that, if the missing line
were supplied, the tract would contain some forty acres more than the number
stated in the deed; that a portion of some of the lines described as running by
land of the grantor would fall outside of his land; and that there was an oak
tree at the point which the tenant contended the deed was meant to indicate.
*Held*, that oral evidence was admissible to show that such a line was adopted
by the parties to the deed of 1863 as to warrant the inference that the monu-
ments did not agree with the courses, and to raise a presumption that monu-
ments of the kind mentioned had previously existed on this line.
For the purpose of showing the true boundary line of land, declarations of a mort-
gagor in possession are admissible against one claiming under a foreclosure of
the mortgage.

WRIT OF ENTRY, dated August 6, 1884, to recover a tract of
woodland in Holden.    At the trial in the Superior Court, before
*Pitman*, J., the jury returned a verdict for the tenant; and the
demandant alleged exceptions, which appear in the opinion.

*B. W. Potter*, for the demandant.

*F. A. Gaskill*, for the tenant.

HOLMES, J.   The demandant sets up a title, through mesne
conveyances, under a deed from one Hobbs to one Davenport,
executed in 1863.   The tenant holds under a subsequent deed
from Hobbs's heirs.   The controversy is whether the demanded
premises are embraced in the description of the earlier deed,
which they are admitted to be, if the courses and distances are

to govern; and the question presented by the exceptions is whether there is any such ambiguity in that description as to let in parol evidence, inconsistent with the courses and distances, and to warrant leaving the matter to the jury.

The description is as follows: " Beginning at a corner of the premises conveyed, on the road leading from Oakdale to Holden; thence N. 16° W. 127½ rods by land of C. Perry to stones at a corner; thence N. 54° E. 30 rods to stones; thence N. 53° E. 55 rods to stones; thence N. 54° E. 24 rods and 18 links to a white-oak or corner; thence S. 33° E. 37 rods to stones, the four last lines by land of grantor; thence S. 50° E. 62 rods by land of Washburn and Moen to the aforesaid road at stones; thence running by said road 169 rods and 8 links to the first-mentioned bound." The deed also conveyed another lot, on the opposite side of the road, and described the whole as " containing by estimation 126 acres more or less."

The starting point, and the first boundary, on land of C. Perry, as well as the last two, on land of Washburn and Moen and on the road, are fixed and not in dispute. And the demandant's testimony showed that in 1884 there were stones and trees at or near most of the points indicated by the courses and distances between the established boundaries. The tenant did not offer direct evidence that other stones or trees were the true monuments, although he showed that there were other white-oak trees in the vicinity, and one at the point which he contended the deed was meant to indicate.

As the monuments between the corner on land of C. Perry and the Washburn and Moen land are not directly identified except by the courses and distances, we may leave them on one side for the moment. But when we come to lay out the courses and distances upon the land, we find that the line " S. 33° E. 37 rods to stones " does not carry us to the Washburn and Moen land, which is the next boundary, but is about 850 feet away from it in a straight line; or if we assume that the end of that line on the Washburn and Moen land is fixed as by a monument, then the hiatus is at some uncertain point between that and the corner on land of C. Perry. There was evidence that, if this line were supplied, the land conveyed by Hobbs would be some forty acres more than one hundred and twenty-

six, as stated in his deed, if that is important in view of the words " more or less." *Lovejoy* v. *Lovett*, 124 Mass. 270, 273. *Noble* v. *Googins*, 99 Mass. 231. Furthermore, according to the tenant's evidence, a portion of the four lines described as running by land of the grantor fall outside of that land for an appreciable distance.

It will be seen that the deed purports to bound the land continuously. For the word " thence," preceding each course given, imports that the following course is continuous with the one before it. And the same thing appears from the other language of the deed. The continuity of the boundary lines is not reconcilable with the courses and distances given. And this raises the question whether the courses and distances given, after we leave the land of C. Perry and before we reach the Washburn and Moen boundary, are to prevail over the statement that each boundary given is continuous with that next previously mentioned, as well as over the evidence to which we have referred.

If the only ambiguity consisted in the impossibility of laying out the lines continuously by the courses and distances given, between fixed points, we will assume that the wanting line might be supplied, and whether parol evidence would be admissible or not we need not consider. *Commonwealth* v. *Roxbury*, 9 Gray, 451, 490. *Woodward* v. *Nims*, 130 Mass. 70. But when monuments are referred to, although they cannot be identified directly and certainly by applying the description to the land, and although, in the absence of any ambiguity, they might be presumed to agree with the courses and distances, the deed shows on its face an alternative mode of boundary, which did not necessarily coincide with the courses, which must be taken to have controlled the courses in the minds of the parties, if it did not agree with them, and which may reconcile the contradictions already shown to exist.

Under the circumstances which we have set forth, we think evidence admissible that such a line was adopted by the parties as to warrant the inference that the monuments did not agree with the courses, and to raise a presumption that monuments of the transitory and uncertain kind mentioned had previously existed on this line. The evidence introduced was of this nature. Moreover, it showed that at the end of the main line adopted, a

line which ran by other land of the grantor, was a white-oak tree; and, if this tree was the monument referred to, the boundary could be run from it, with the distance next given, to the Washburn and Moen land. Thus the evidence had some tendency to prove that this tree was the true monument. We may mention, for what it is worth, that the evidence also showed that the line adopted was between the pasture and woodland, and that it was shown without objection that the courses and distances in Hobbs's deed seemed to follow, in reverse order, a quitclaim deed of a mortgagee to him made a few months before he conveyed to Davenport, which adds, " the four last lines are between the pasture and the woodland."

The foregoing considerations dispose of all the demandant's exceptions except the admission of statements by a former owner in possession of the land as to where he understood the line to run. The objection is, that the land was then subject to a mortgage, which has since been foreclosed, and under which the demandant derives his title. And this does, of course, raise the technical difficulty that the demandant's title is paramount to that which the mortgagor had at the time when he made the admission. But this objection is rather formal than substantial. The admission goes in as evidence, not as an estoppel. It was made by one who was in the same chain of title with the demandant, who had a common interest in the matter with the mortgagee, and who was owner at the time. *Prima facie* at least, its value as evidence was not diminished by the fact that there was a mortgage outstanding. See *Chapman* v. *Edmands*, 3 Allen, 512; *Niles* v. *Patch*, 13 Gray, 254.

*Exceptions overruled.*