# CHARLESTON

## NEWMAN v. KAY.

Submitted January 18, 1905.    Decided February 7, 1905.

1. SALE OF REALTY.—*By Boundary or Acre.*—*Parol Testimony.*

A contract for the sale of a tract of land, or a deed conveying a tract of land, specifying the quantity by the words "containing ..... acres," (giving the number,) and reciting a price which is an exact multiple of the number of acres so mentioned, is presumed to be a contract of sale of the tract in gross, but is ambiguous on its face as to whether it is a contract of sale in gross or of sale by the acre, and parol evidence of the circumstances, which surrounded the parties, and their situation, when the contract or deed was made, and the conduct of the parties in carrying the contract into execution, is admissible as an aid in interpreting such contract or deed. (p. 103.)

2. SALE OF REALTY—*Gross Sale or by Acre.*

Whether a deed, reciting $4,800 as the price of a tract of land thereby conveyed, and describing it by metes and bounds and as "containing 200 acres and 37 square poles," is ambiguous on its face, as to whether the sale was in gross or by the acre, *quaere?* (p. 103.)

3. SALE OF REALTY IN GROSS.—*Parol Evidence.*

   A case in which the admissible parol evidence is held insufficient to prove that a contract of sale of land was by the acre, the deed being treated as ambiguous on its face as to whether the sale was in gross or by the acre.   (p. 104.)

4. SALE OF REALTY.—*Sale in Gross—Excess of Acreage—Rescission of Sale.*

   As to the vendor, every sale of land in gross is a contract of hazard as to the quantity of the tract or tracts sold, and he cannot recover on the contract, either at law or in equity, compensation for an excess therein above the quantity which the tract or tracts were, at the time of the sale, supposed to contain.   Nor can he have rescission of the contract, on the ground of mutual and innocent mistake as to the quantity, resulting in a considerable excess, when both parties have been ignorant of the area of the land and free from fraud in the execution of the contract.   (p. 108.)

5. SALE OF REALTY, WHEN RESCINDED.—*Cases Overruled.*

   In so far as they hold that a contract of sale of land in gross may be rescinded on the ground of a mutual and innocent mistake as to the quantity of land in the tract sold, resulting in a large excess or deficiency, no other ground for relief being shown, *Western Mining & Manufacturing Co.* v. *Peytona Cannel Coal Co.*, 8 W. Va. 406; *Crislip* v *Cain*, 19 W. Va. 438; *Hansford* v. *Coal Co.*, 22 W. Va. 70, and *Pratt* v. *Bowman*, 37 W. Va. 715, are disapproved and overruled.

Appeal from Circuit Court, Fayette County.

Bill by W. C. Newman and others against James Kay and others.   Decree for plaintiffs, and defendants appeal.

*Reversed.*

PAYNE & HAMILTON and BROWN, JACKSON & KNIGHT, for appellants.

C. W. DILLON and A. N. CAMPBELL, for appellees.

POFFENBARGER, JUDGE:

Whether a certain sale of real estate, the contract having been executed by conveyance and payment of all the purchase money, was a sale by the acre or in gross, is the first question presented in this case; and it being held to have been a sale in gross, the second is whether the sale can be rescinded in equity on the ground of a considerable excess, found upon surveying the tract of land, both parties having been ignorant, at the time of the sale, of the quantity of the

land and both being entirely free from any fraud or misrepresentation as to quantity.

In 1884, W. W. Newman, a resident of Virginia, died seized of a tract of land in Fayette county, this State, described in his deed by metes and bounds, as containing two hundred acres and thirty-seven poles, and leaving his widow and two sons surviving him. On the 23rd day of October, 1895, the widow and sons conveyed the lands to James Kay, in consideration of $4,800.00 of which $1,000.00 was paid in cash, and for the residue of which the purchaser executed his four negotiable notes in equal amounts, payable in one, two three and four years. This deed described the land thereby conveyed in the exact language used in the old deed by which it had been conveyed to W. W. Newman, in 1874, and reserved a vendor's lien for the unpaid purchase money.

Some time afterwards, Kay had the land surveyed and found that the tract contained two hundred and seventy-two and two-tenths acres, and had the land book corrected accordingly. Knowledge of this excess of seventy-two acres having come to the Newmans, they caused a notice to be served on Kay on the 26th day of October, 1900, reciting the discovery of the excess, claiming they had sold by the acre in ignorance of the quantity, demanding payment for the excess at the contract price of $24.00 per acre, or a rescission of the sale, and averring their readiness and willingness to repay the purchase money with interest. Kay having refused to do either, they brought this suit, alleging in their bill the facts relating to the sale, hereinbefore set out, and, in addition thereto, that, at the time the deed was executed, they believed the tract contained only the quantity mentioned in the deed, and so represented to J. M. Richards who negotiated and consummated the sale; that, at the time, they did not know it contained a larger quantity; and that they were informed and believed said Richards and Kay accepted the deed with the understanding that the quantity of land was as stated in the deed.

A few days before the deed was executed, the Newmans executed to Richards, "his heirs and assigns," an option on the land for twenty days, at the price of $24.00 per acre, describing the tract as containing, by estimation, two hundred acres, and the bill sets up the option and alleges that when

Richards came and negotiated for it, he represented that he desired to purchase the land for some person other than himself, whose name he did not disclose. It is further shown that Richards returned to Virginia a few days after the execution of the option with the deed prepared to be executed by the Newmans, conveying the land to Kay, which, it is charged, he represented to be in exact conformity with the terms and stipulations of the option, except that it set forth the aggregate amount of purchase money instead of specifying the price per·acre; and that this variance was discussed at the time of the execution of the deed, and the plaintiffs were assured that the deed was in substantial conformity with the option. The option, the notice served on Kay, and copies of the deed to Kay and the deed to W. W. Newman are exhibited with the bill.

It is further alleged that Kay has leased the land to Frank Lyman, who is made a defendant, for the purpose of mining and removing the coal underlying it, and that Lyman has released it to the Low Moore Iron Company, but that none of the coal had been mined at the time of the institution of the suit; and plaintiffs aver their willingness, in case the sale shall be rescinded, to carry out the terms of the lease made to Lyman and the one made by Lyman to the iron company.

. The prayer is that Kay be required to pay plaintiffs for said excess at $24.00 per acre with interest from the date of the deed, or that the sale and deed be rescinded, and that they may have general relief.

Kay demurred to the bill, and, his demurrer being overruled, he answered, denying that Richards was his agent in the matter of the purchase, averring that he purchased from Richards for the sum of $5,440.00, giving him $644.00 in addition to the $4,800.00 paid to the Newmans; that he had no notice or knowledge of the option; that Richards acted for himself and represented that he had authority to sell and procured and delivered the deed as aforesaid; that the sale was one in gross, the land having been purchased by the defendant to solidify his holdings of surrounding lands, and irrespective of its acreage; that such was the inducement and understanding of the parties; that the quantity of the land was easily ascertainable and could easily have·been known by plaintiffs, had they exercised ordinary care;. that they had

conveyed by the description and statement of quantity contained in the deed to·W. W. Newman; that the defendant, upon the faith and credit of said purchase, had expended large sums of money, whereby the property had been greatly enhanced in value, and sold to third parties who had made further heavy expenditures on account thereof, in consequence of which the plaintifis were barred by *laches*; that the plaintiffs sold and received pay for the exact quantity purchased and paid for by W. W. Newman, wherefore, his vendors, if anybody, were entitled to pay for the excess; that defendant had made large expenditures in rendering said tract and others, near to, or adjoining it, valuable and accessible to market, and effected a coal lease thereon with an option of purchase to Frank Lyman, who assigned it to the Low Moore Iron Co., and sale of the land was afterwards consummated, and that in the event of a rescission, the parties cannot be placed *in statu quo*, wherefore, and because of the *laches* of complainants, if they ever had any right, a court of equity cannot entertain their suit. Although denying the right of the plaintiffs to have rescission, the respondent asks that, in case the court shall be of opinion that the complainants are entitled to such relief, he may be permitted to pay for the excess.

Depositions were taken and filed by both parties, and, on the hearing, the court pronounced a decree in favor of the plaintiffs for $2,341.44, awarding execution therefor and granting the plaintiffs leave for further proceedings against the land, should said sum and the costs be not paid. From this decree, Kay has appealed.

As the rights and liabilities of the parties to a sale of real estate by the acre materially differ from those arising out of a sale in gross, it becomes necessary to determine, in the first instance, whether the sale now under consideration was by the acre or in gross. The principles governing the construction of deeds and contracts of sales of real estate are exhaustively considered and accurately defined in the case of *Crislip* v. *Cain*, 19 W, Va. 438. In reaching his conclusions, JUDGE GREEN, who delivered the able opinion of the Court, in that case, reviewed and analyzed all the Virginia decisions, as well as all the leading cases decided by other courts, and the principles deduced by him from them were

embodied in the syllabus of the case and declared to be sound law. As tested by those rules and principles, the contract of sale, evidenced by the deed from the Newmans to Kay, is a contract of sale in gross.

So much of point 18 of the syllabus as relates to the rule for determining what is a sale in gross reads as follows: "If the vendor by his written contract agrees to convey, or by his deed does convey, for a specified price a tract of land described by metes and bounds or otherwise with the words added 'containing a specified number of acres,' this on the face of such contract or deed is a contract not by the acre but in gross and without any implied warranty of the quantity.     *     *     *     And if in addition to the exact specification of the quantity of the land the contract or deed on its face shows, that the price to be paid for the land is a multiple of the number of acres specified, this would render the deed ambiguous, as to whether it was a contract in gross or by the acre." In point 19 the effect of ambiguity in the contract or deed, resulting from the circumstances of the mathematical relation of the price to the number of acres, is stated as follows: "If such deed or contract is rendered ambiguous on its face in the manner just spoken of, the court for aid in interpreting the same may consider parol evidence of the circumstances, which surrounded the parties, and their situation, when the contract or deed was made, and also the conduct of the parties in carrying the contract into execution; but the court can consider no other sort of parol evidence, such as the declaration of the parties before, at the time of or after the execution of the deed or contract; nor can the court call in aid any kind of parol testimony to alter, explain, or modify the written contract or deed, if it is unambiguous on its face."

This deed states the whole amount of purchase money at $4,800, and then conveys and describes the land in the following terms: "The said F. E. Newman, W. C. Newman and E. W. Newman do grant unto the said James Kay all the following real property, situate," &c., (giving its location and metes and bounds,) "*containing 200 acres and thirty seven square poles.*"

It specifies the aggregate price and the number of acres. No account is taken of the thirty-seven square poles, nearly

a quarter of an acre, which would have been nearly six dollars, a very insignificant sum, to be sure, and, in itself, unworthy of notice, but the inquiry here is for the legal effect of the terms used in the deed. It is from them that the intention of the parties is to be ascertained, if possible. Upon such an inquiry, a single word or a fact, very insignificant in itself, often determines the construction, without regard to the magnitude of the interest dependent upon it. The decision of the question, whether the slight variation might be disregarded, and the deed held to be ambiguous on its face as to whether the sale was by the acre or in gross, however, for reasons presently to be given, is unnecessary and would be without practical value as a precedent, since the variance from the multiple rule is peculiar in its nature and unlikely to occur often, if ever again.

If the ambiguity of the deed on its face be conceded, the admissible evidence is wholly insufficient to establish a sale by the acre. Much of it consists of declarations of intention which could not be admitted at all. Only the circumstances which surrounded the parties and their situation at and before the making of the contract and their conduct in carrying it into execution can be considered.

Kay knew nothing about the quantity of the land nor had he anything to do with the Newmans personally. He never saw them, nor corresponded with them. They lived near Richmond and knew nothing about the quantity of the land, except that their deed called for two hundred acres and thirty-seven poles. All communications between the Newmans on the one side, and Kay on the other, were had through Richards. He says he had purchased some property for Kay in the neighborhood of the land in question, and showed him a map of the Newman land and suggested that its situation with reference to lands purchased, or negotiated for, by Kay, made it desirable property for him, whereupon Kay told him to buy it if he could; and that he then corresponded with the Newmans who said they would sell it at $25.00 per acre. Then, as claimed by Richards, he went to Kay and offered it to him at $30.00, and was told to go on and get it, whereupon he went to Richmond and persuaded the owners to give him the option hereinbefore described at $24.00 per acre, came back with it, showed it to Kay, offered to do what was right with

him about the land, received from Kay $600.00 or $700.00 to
go back to Richmond and close the contract under the option
and a letter from Kay to Kay's attorney at Fayetteville to
draft the deed and notes and a deed of trust to secure the
deferred payments, which was done, took the papers back to
Kay who, with his wife, acknowledged the deed of trust, and
delivered the deed, trust deed, his four notes and his check to
Richards, who took these papers to Richmond and procured
the execution of the deed and brought it back to Kay. Kay
denies that he ever had possession of the option, and the
testimony of Richards imports no more than that he saw it.
He also denies having told Richards to buy the land. But
he says he told him he might buy it of him if he bought it;
that Richards went to Richmond and either wrote or tele-
graphed that it would require a certain amount of money to
buy the property, to which he replied that he did not want
it at that price and would have nothing more to do with it;
and that Richards, after returning, came to see him again,
saying he had tried in vain to sell to others and his option
was about to expire, whereupon he gave him, or agreed to
give him, $600 for his bargain in the land, without ever
having seen the option, which arrangement was afterwards
consummated, as has been stated. He denies that Richards
was his agent, that he purchased by the acre, and that he
accepted or adopted the Richards option. There is no pre-
tense that the option was ever assigned to him, or accepted
by him so as, in any manner, to bind him. The Newmans
say they had no intention of selling otherwise than by the
acre; that Richards told them he was buying for another
person whose name he did not disclose; and that when he
came back with the deed; they rather objected to it as not
conforming in terms to the option, but were assured by
Richards that it was, in substance, the same.

A great deal of this evidence could not be considered.
Declarations of parties as to intentions are inadmissible.
Kay was engaged in the effort to buy, or get control of,
several adjoining tracts of coal lands with the view to obtain-
ing enough in a body to enable him to make an advantageous
sale to some person desiring to engage in mining on an exten-
sive scale, and the Newman lands were found to be desirable
for combination with others which he had bought or contem-

plated buying.   He no doubt wanted it and would have made
the contract by the acre had that been insisted upon, but
there is no evidence that his attention was ever called to the
distinction between the two kinds of contract, unless his very
slight connection with the option may be said to have had
that effect.   That option stands upon a footing very different
from a contract of sale between the Newmans and Kay.   Had
Kay been a party to it, he would not have been in any sense
bound by it to take the land on the terms therein stated or
any others.   While it bound the owners of the land to sell,
it did not bind the holder to purchase.   As to the latter, it
was a mere proposal to sell.   But it was not even a proposal
as to Kay.   Under it, Richards had the exclusive right to
purchase, and that right was never assigned to Kay.   The
option was the proposal of the Newmans to sell to Richards
or his assignees.   The delivery to the Newmans of the check,
notes, deed for execution and deed of trust was Kay's pro-
posal to buy the land.   On the whole, there appears to be
nothing in the circumstances, situation or conduct of the
parties indicating that the deed was intended to be other than
what, on its face, it appears to be.   They ignored in their set-
tlement the thirty-seven poles, a fact which argues slightly in
favor of a sale in gross.

This view is strengthened by the circumstance of the con-
duct of the grantors, both before and after the sale.   They
were content to rely upon the representation as to quantity
in the old deed under which they held.   Neither before nor
after did they cause any survey to be made.   It nowhere
appears that any inquiry as to the actual quantity of land
was ever made by them.   This conclusion is in exact accord
with that of this Court in *Hansford* v. *Coal Co.*, 22 W. Va.
70.   In that case, the deed specified $8,000 as the price, and
four hundred acres as the quantity, of the land.   The analy-
sis of the admissible evidence, as given by JUDGE SNYDER in
the opinion of the Court, is as follows:   "Was this a sale in
gross?   It is *prima facie* such sale; but inasmuch as it
appears on the face of the deed that the consideration is an
exact multiple of the number of acres specified therein, the
deed is thereby rendered ambiguous as to whether it was in
fact intended by the parties to be a sale in gross or by the
acre; and whether it is the one or the other must be deter-

mined by the parol evidence of the circumstances surrounding the parties, their situation at the time of the sale and their subsequent conduct in carrying it into execution. This evidence, which has been hereinbefore fully stated, in my judgment, not only fails to rebut the presumption of a sale in gross arising from the face of the deed, but it clearly establishes the fact that it was intended and understood to be such by the parties at the time it was made. The conduct of the parties can be reconciled to no other conclusion. They knew at the time that the land had been located by protraction, that it had never been actually surveyed, that constructive or protracted surveys are proverbially uncertain in quantity, and that almost all old surveys exceed the quantity they call for. The sale was for cash, the deed was delivered and the money paid without any demand for a survey by either party, or any provision or agreement made for a future survey. No survey was made or required by the grantors subsequent to the sale, and none made by the grantees until five years after, when one was made by the latter for their own use without any reference to the purchase. The vendors never claimed or demanded pay for any surplus land until April, 1876, when by their cross-bill in this cause they for the first time asserted a claim for pay for such surplus without even their making, so far as the record shows, any personal demand for such pay. Considering these facts and circumstances, the conclusion is inevitable to my mind that it was fully understood and intended by the parties that said sale should be treated as and that it was in fact, a sale in gross and not by the acre.''

Such being the character of the sale, no action or suit, at law or in equity, based upon the contract, for the recovery of compensation for the excess can be maintained. The grantee obligated himself to pay $4,800.00 and no more. He did not agree to pay a certain sum for each acre of land that might be found in the tract, but to pay a lump sum for the tract of land. It is not suggested nor pretended that there was any fraudulent act on the part of the grantee, operating as an inducement to the grantors to enter into the contract, or in any other way injuring them. Whether knowledge of the excess on Kay's part, fraudulently concealed from the grantors, would give a right of action against him as for a deceit, need

not therefore be considered. It would be preposterous to say that an innocent mistake on his part, shared in by the grantors, is a wrong which would give a right of action to them against him. Hence, so much of the bill as seeks compensation for the excess is wholly without any foundation in law or equity. A mutual mistake, resulting in the making of a contract which would not have been made had the parties possessed full information, does not authorize the court to make such a contract for them as they might have made. It cannot be assumed that they would have made any contract at all had they been in possession of all the facts. *Crislip* v. *Cain*, is conclusive as to this and is in such perfect harmony with reason and justice that it must be accepted as sound. The language is as follow:

"But no court of equity in such case of mutual innocent mistake, neither party being guilty of any fraud in the sense above explained, has a right to modify and alter the contract of the parties, so as to make it correspond with what, the court may think it probable, would have been the terms agreed upon by the parties, had they not by means of such innocent and mutual mistake been ignorant of the actual facts at the time, when the contract was entered into. All the court can do in such a case is to rescind the contract. It cannot modify the contract; for that would really be making a contract for the parties against their consent and then enforcing it, which would be usurpation of a very dangerous power."

There are some instances in which, upon a contract of sale in gross, a recovery may be had by the vendee in case of a deficiency in the land sold. Specification in the deed of the exact quantity of the land sold, without any qualifying words whatever annexed, renders the contract ambiguous as to whether or not, although it is one of sale in gross, the vendor, by such positive affirmation of quantity, did not warrant the quantity. The effect of this is twofold: First. To overcome the presumption that the grantor did not intend to warrant the quantity, the circumstances which surrounded the parties, their situation and their conduct in carrying the written contract into execution are admissible. If an intention to warrant is thus shown, there may be a recovery of compensation for deficiency, on the warranty. *Crislip* v. *Cain*, pts. 18

and 19 and pp. 558 and 559. Here, the recovery would seem to be based upon a covenant in the deed or contract. It is a warranty of quantity in the deed in favor of the vendee, binding the vendor, but evidently not binding the vendee beyond his express covenants. In other words, it does not bind the vendee to pay for an excess, though it does bind the vendor to abate for deficiency. Second. Such specification of quantity in the deed is a representation which may, or may not, be a fraud on the part of the vendor, according to the conduct and intent of the parties, and, to ascertain whether a fraud was in fact perpetrated by the vendor on the vendee, all kinds of relevant parol evidence is admissible. *Crislip* v. *Cain.* syl. pt. 21 and pp. 559 and 560. Here, the recovery stands upon an affirmative fraudulent act, known as *suggestio falsi.* There is another class of cases in which compensation or abatement, on the ground of deficiency, may be had, in which the fault of the vendor is the suppression or concealment of knowledge as to the quantity of land which operates to the injury of the vendee. Thus, in *Duvals* v. *Ross,*, 2 Munf. 289, it is held that "Whenever it appears that the vendor's own title deeds must have disclosed to him the true quantity of land, he is bound to make compensation for a deficiency, tho' his deed to the vendee express a quantity, 'more or less.'" To the same effect see *Nelson* v. *Matthews,* 2 H. & M. 164. If, by any other means, it appear that the vendor knew the quantity and withheld the knowledge from the vendee to his injury, the result will be the same. Here, the recovery is a negative act of fraud, known as *suppressio veri.*

It must be observed that what is said in the preceding paragraph relates to deficiency in quantity, not excess. There may be an act of fraud, giving a right to the vendor to recover compensation for an excess from the vendee, when the sale is in gross, but the foregoing · principles laid down in *Crislip* v. *Cain* are not applicable to cases of excess. Moreover, that case distinctly and emphatically asserts that, in such cases, if both parties were mutually and innocently mistaken as to the quantity, and there turns out to be an excess, there can be no recovery of compensation therefor. But it is declared in that case that the contract itself may be rescinded, torn up, annulled and destroyed, and the parties restored

to their former condition.  This proposition is announced in at least three other cases decided by this Court, *Western Mining and Manufacturing Co.* v. *Peytona. Cannel Coal Co.*, 8 W. Va. 406, *Hansford* v. *Coal Co.*, 22 W. Va. 70, and *Pratt* v. *Bowman*, 37 W. Va. 715.

In *Crislip* v. *Cain*, point 14 of the syllabus, it is declared: "If it be a contract for a sale of land in gross, and the number of acres contained in the tract, sold or conveyed is named, and on survey it turns out afterwards, that there is either a deficiency or excess in the number of acres in the tract, under some circumstances a court of equity might rescind the contract or annul the deed because of a considerable mistake of the parties as to the number of acres in the tract, though such mistake was mutual and innocent, and neither party was guilty of any fraud in the sense in which fraud is above explained.  Such rescission could not be made, unless the mistake was so material as to show that it affected the substance of the contract, and that the minds of the parties had not really come together on the terms stated in the contract or deed." In *W. M. & M. Co.* v. *P. C. C. Co.*, points 15 and 16 of syllabus, substantially the same proposition is asserted.  In *Hansford* v. *Coal Co.*, point 7 of the syllabus, it is said: "Where such deed is on its face a sale in gross, if it is subsequently ascertained that there is either a deficiency or an excess in the quantity of land specified therein, and it is shown that the error in the quantity arose from a mutual and innocent mistake of the parties, a court of equity may, in some cases, upon proper pleadings and proof, annul the deed and rescind the sale, but in the absence of fraud, actual or constructive, in either party such court can allow no abatement for a deficiency or compensation for any excess."  In *Pratt* v. *Bowman*, the same proposition is asserted, and a recovery for excess decreed, because the purchaser had sold the land and put it beyond the power of the vendor to obtain relief by rescission.  In the last named case, sales in gross are divided into three classes, two of which are declared to be sales at hazard, forbidding rescission.  The third, in which it is held there may be rescission, is described as follows:  "Sales in which it is evident from extraneous circumstances, such as locality, value, price, time, the conduct, conversation, and character of the parties, that they did not or ought not to contemplate

or intend to risk more than the usual rates of excess or deficiency in like cases, or than such as might reasonably be calculated on as within the range of ordinary contingency.'' It is to be noticed that the cases say rescission may be had because of either *deficiency* or *excess*, under the circumstances stated.

It is insisted that these successive enunciations of this rule of rescission are not binding upon the court for the reason that they are *dicta*.    In the first case, *W. M. & M. Co.* v. *P. C. C. Co.*, the bill sought the correction of a deed by a change of one of the lines. described in it, so as to make it conform to what the plaintiffs believed to have been the contract actually made.  After making a disposition of this contention adverse to the plaintiffs, Judge Hoffman examined the pleadings and evidence in the case to ascertain whether there could be rescission of the contract, because of an admitted excess of eight hundred and fifty acres in the tract which had been conveyed as one containing six thousand one hundred and twenty-three acres.    Evidently this was done to see whether the bill was susceptible of amendment so as to give relief, under the rule that, where a plaintiff has a good case on the evidence, but his bill is defective in its allegations, he is permitted to amend, so that substantial justice may be done between the parties.    Finding that about six years had elapsed between the times of the discovery of the excess and the filing of the bill, he concluded that whatever equity the plaintiffs may have had was then barred by their *laches*.    In *Crislip* v. *Cain*, the proceeding was for an abatement from the purchase money on account of a deficiency, but it did not seek rescission.   However, if it had been apparent to the court that relief could have been given upon amended pleadings, it is not to be doubted that the defects in the pleadings would have been indicated and leave to amend granted.    But the Court seems to have concluded that there was no mistake and, consequently, no ground for rescission.    In *Hansford* v. *Coal Co.*, the Court dealt with an appeal from a decree, dismissing a cross-bill, setting up a claim for compensation for an excess of sixty-eight acres in a tract of land sold as one containing four hundred acres, at a price equivalent to twenty dollars per acre, and from an order refusing leave to file a bill of review to the same decree for error of law.  Viewed as one seek-

ing recission, the cross-bill was defective, there being no prayer for such relief and no tender, or offer, of re-payment of any money received. It had been dismissed without the interposition of any request for leave to amend. In view of this, no reason is perceived for any discussion of the principles of rescission. As the cross-bill had been dismissed without a request for leave to amend in the court below. the defendants were in no condition to ask any relief at the hands of this Court. *Pratt* v. *Bowman*, undoubtedly goes further than any of the other three cases, and it may safely be said, without taking time to fully analyze it, that the decision recognized, and stands, in part, at least, upon, the proposition now under discussion. Reference is made to the fiduciary character of the vendor, but the decision is clearly not based solely upon his want of authority. That seems to be treated merely as a circumstance bearing upon the intent of the parties.

One of the best definitions of the term *obiter dictum* is said to be that given by Folger, J., in *Rohrbach* v. *Ins. Co.*, 62 N. Y. 47, 58. He said: "*Dicta* are opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not the professed deliberate determinations of the judge himself; *obiter dicta* are such opinions uttered by the way, not upon the point or question pending, as if turning aside from the main topic of the case to collateral subjects." In *U. S.* v. *Clark*, 96 U. S. 211, Mr. Justice Strong said of an expression of opinion in another case, after stating the exact point decided therein: "The case called for nothing more; and, if more was intended by the judge who delivered the opinion, it was purely *obiter*." Many definitions are more liberal. These give the principle strictness and rigidity, and even under them, it is manifest that the declaration of the rule in *Pratt* v. *Bowman*, is in no sense *obiter*. It is applied to the facts and made the basis of the decision. It would be difficult to reach any other conclusion as to the views expressed in *W. M. & M. Co.* v. *P. C. C. Co.* But in *Crislip* v. *Cain*, and *Hansford* v. *Coal Co.*, it may be otherwise. In all of them, the proposition is formally and solemnly incorporated in the syllabi, as if deliberately stated upon mature reflection and consideration. As it is manifest that the Court has, in at least two cases, applied the rule, it

is useless to spend further time on the inquiry as to the judicial character of these enunciations.

Search for a precedent in the decisions of Virginia up to the date of the division of the State, and in those of this State prior to that of *W. M. & M. Co.* v. *P. C. C. Co.*, to sustain the proposition that rescission may be had because of a considerable excess when the sale is in gross and the parties to the deed were ignorant of the quantity in the tract and without fault, will be made in vain. Up until that time, sales in gross had been uniformly held to be contracts of hazard from which no relief could be had, in the absence of fraud, except upon the ground of a mutual and innocent mistake as to some matter going to the very essence and substance of the contract. A difference in quantity, however great, was not deemed to be of the substance of the thing contracted for. Its materiality, by a sale in gross, was deemed to have been eliminated from the contract. Both parties took the risk of variation from the acreage stated in the deed, if any was stated. Thus, in *Ticker* v. *Cocke*, 2 Rand. 51, 66, Judge Green, delivering the opinion of the court, in a case similar to this, said: "There are cases in which the mutual error of the parties, without default in either, may be a just ground for rescinding a contract. As, if the error be in a matter which is the cause of the contract, that is, in the *substance* of the thing contracted for, so that the purchaser cannot get what he bargained for, as in the case of a purchase of military lands on Paint Creek, stated to be located under specified warrants, and the warrants were located elsewhere; and of the purchase of an obligation at the risque of the purchaser, and the paper turned out to be forged, or the obligor to have been previously discharged from the obligation, under the statute of bankruptcy. In such cases the contract ought to be vacated, even if it had been executed; and, if both the parties, in the first case, verily believed that the warrants were located on Paint Creek, and, in the other, that the obligation was genuine and the party bound by it; the object in the first case, being to buy lands on Paint Creek; and, in the other, to buy a valid and subsisting obligation, the error would go to the *substratum* of the matter contracted for. *Chamberlyne* v. *Marsh*, 6 Munf. 283; *Armstrong* v. *Hickman*, *Ibid.* 287. But, if in the one case, the warrant had really

been located on Paint creek, and the parties had both been of opinion, from the general character of lands on that creek, that the lands were of great value, and it had turned out that they were of very little value; or, if in the other, the obligation had been genuine and still binding upon the obligor, and both parties believed that he was in affluent circumstances and able to pay, and it turned out that he was, at the time of the contract, utterly insolvent; the purchaser in neither case, could have relief, since he has gotten that which was the cause of the contract, and the error was in relation to the very hazard, which the purchaser took upon himself. If relief could be given in such a case as the case at bar, *a fortiori* it should be given, if the vendor knew of the deficiency and concealed it. So that, in both cases when the vendor knew, and when he was ignorant of the deficiency, relief being given, there could no longer be a contract, in which a purchaser could take the risque of quantity effectually upon himself. The Court of Appeals have uniformly recognized the validity and obligation of such a contract, and in all cases in which they have given relief, it has been founded on circumstances either of fraud, misrepresentation or concealment; or mistake in part, or in whole, in relation to the substance of the *thing contracted for*. It is possible, that the case of *Quesnell* v. *Woodlief*, 2 Hen. & Munf. 173, does not fall within this observation; but, the grounds of the judgment in that case are so uncertain, some of the Judges who decided it, the Reporter and the counsel on both sides, who argued the cause, differing so materially in their statements of the reasons upon which the judgment was founded, that it cannot be considered an obligatory authority to the point now under consideration; and, if it were so considered, it has been repeatedly overruled."

What Judge Green meant by reference to error affecting the substance of the contract, going, as he says to "the *substratum* of the matter contracted for," is illustrated by a number of decided cases. Thus, in *Chamberlyne* v. *Marsh*, 6 Munf. 284, the vendor intended to sell, and the vendee to buy, lands on Paint Creek and those described in the written evidence of the contract were not on that creek. In *Graham* v. *Hendren*, 5 Munf. 183, there was a misunderstanding as to the identity of the land, in consequence of which the con-

tract was rescinded. *Glassell* v. *Thomas*, 3 Leigh 113, is a
similar case. In *Fearon Lumber Co.* v. *Wilson*, 51 W. Va.
this Court decreed rescission of sale of lands because of a mutual
mistake as to the location of the lands. Perhaps no clearer
discrimination between substance and a mere concomitant
in a contract of a sale of land has ever been made than that
given by Judge Carr in *Thompson* v. *Jackson*, 3 Rand. 504.
He said: " But take the land lost at the largest estimate, and
say it was worth a fourth of the whole purchase money,
(which is contradicted by the surveyor, and cannot I think,
be the fact:) yet can it be said, that it furnishes one of those
cases of mistake, which would authorize the rescission of the
whole contract? Has not the purchaser gotten the substance
of the thing bought? The surveyor says that this slip has no
peculiar value: that it is maiden woodland, and there is suf-
ficiency of timber for the place, without it. If you say that for
such a deficiency as this, not affecting the bulk of the land,
you will rescind, where will you stop? I have shown that
equity will refuse a specific execution in many cases, where
it would not rescind; and yet, there are decisions in abund-
ance, to show that a trifling deficiency, of a few acres, in a
tract of land, will not even present an obstacle to a specific ex-
ecution; the court saying, that such deficiency lies clearly in
compensation, and that the party is made whole, by abating
so much the purchase money, as is an equivelant for it."

These illustrations sufficiently show what is meant by a
mistake which affects the substance of the contract. It must
be something affecting the identity or actuality of the thing
which forms the subject matter of the contract, going beyond
the mere quantity, quality or value of that thing. And that
where the description is correct and there is no fraud nor
any mistake affecting the substance of the contract in the
sense indicated, there can be no relief by rescission or other-
wise, is maintained by the great weight of authority. "When-
ever it appears by definite boundaries, or by words of quali-
fication, as 'more or less,' or as 'containing by estimation,'
or the like, that the statement of the quantity of acres in
the deed is mere matter of description, and not of the essence
of the contract, the buyer takes the risk of the quantity, if
there be no intermixture of fraud in the case." 4 Kent Com.
467. *Noble* v. *Googin*, 99 Mass. 231; *Flagg* v. *Mason*, 141

Mass. 64; *Libby* v. *Dickey*, 85 Me. 362; *Frenche* v. *Chancellor*, 51 N. J. Eq. 624; *Borkenhagen* v. *Vianden*, 82 Wis. 206; *Estes* v. *Odom*, 91 Ga. 600. "But where the lands *in a conveyance* are mentioned to contain so many acres *by estimation*, or the words 'more or less' are added, if there be a small portion more than the quantity, the vendor cannot recover it; and if there be a small quantity less, the purchaser cannot obtain any compensation in respect of the deficiency; and even a large excess or deficiency has not been considered a ground for relieving a vendor or purchaser." 1 Sug. Vend. section 3, p. 490.

There are a few cases which hold that a considerable excess or deficiency in quantity, the parties having been ignorant of the quantity and free from fault, gives right to compensation or rescission, even though the sale is in gross. The leading case of this class is *Harrison* v. *Talbot*, 2 Dana (Ky.) 258. Compared with *Crislip* v. *Cain*, it will be found to be a gross misinterpretation of the Virginia decisions and especially of *Quesnell* v. *Woodlief*, 2 Hen. & Munf. 173, 6 Call, 218, and *Nelson* v. *Matthews*, 2 Hen. & Munf. 164. That case also makes a distinction between executory and executed contracts, and was itself of the former class. Other authorities recognize the same distinction. Sug. Vend. chapter 8, section 5, p. 491, says: "Where the contract rests *in fieri*, the general opinion has been, that the purchaser, if the quantity be considered less than it was stated, will be entitled to an abatement, although the agreement contain the words *more or less*, or *by estimation*, or even stronger words. But in a case where the estate was stated in the contract to contain *by estimation* forty-one acres, *be the same more or less;* and upon an admeasurement, the quantity proved to be only between thirty-five and thirty-six acres; and the purchaser claimed an abatement; the master of the rolls decided against the claim. Upon a motion in *Portman* v. *Mill*, it appeared that the lands were described as containing, by estimation, three hundred and forty-nine acres, or thereabouts, be the same more or less, and the agreement stipulated that the parties should not be answerable for any excess or deficiency in the quantity of the premises, but that the premises should be taken by the purchaser at the quantity, whether more or less; and the actual number of statute

acres was less by one hundred acres than the number stated in the contract.   Lord Eldon said, that as to this stipulation, he could never agree that such a clause (if there were nothing else in the case) would cover so large a deficiency in the number of acres as was alleged to exist there.''

Though the case of *Crislip* v. *Cain*, does not recognize it, the distinction is not without reason.   In executory contracts, the court is called upon to exercise its discretionary powers to decree specific performance, and the defendant sets up his objection before the transaction is completed.   In the case of an executed contract, completed in all respects, the application is for rescission, and here again the court may exercise discretion, and it is well settled that a court of equity will often refuse specifie performance, and thereby deprive the party of the benefit of his contract, under conditions which would not move it to a rescission of the contract, whereby the same result would be attained.   *Thompson* v. *Jackson*, cited. Since *Harrison* v. *Talbot*, is predicated upon this distinction, it is hardly persuasive authority in this case, it being one in which the contract has been fully carried into execution. However, in the opinion in that case, it is suggested that, had the instrument been a deed, conveying the land instead of a contract to convey, the vendor might still be entitled to relief, but, whether by rescission or a decree for compensation as upon the contract, is not indicated.

Among the cases most often cited as authority for the proposition that a sale in gross may be rescinded, on the ground of a mutual mistake as to the quantity of the land, is *Harrison* v. *Talbot*, cited.   In it, however, there was no decree of rescission.   In spite of the plain, simple and just rule, that a court has no authority to make a contract for the parties, in that case, the court, having ascertained that there was an excess of ninety acres in a tract sold for $6,000.00 as one containing four hundred, decreed a conveyance by the vendor, without his consent, of four humdred acres of the land, leaving him the small quantity of ninety acres, thus compelling him to divide his farm into two parts.   It was not a case of rescission, nor one merely refusing specific performance.   It is a case in which the court virtually made a new contract for the parties and enforced it.   It is followed by the case of *Harrell* v. *Hill*, 19 Ark. 102, another

case of specific performance and not of rescision. That was a case of deficiency, and, though the court did say that, as the contract was executory, there might be an abatement on account of gross mistake, it went further and ascertained from the evidence that there had been a misrepresentation by the vendor as to the quantity. The decree harmonizes with the last ground of relief, as it abated the purchase money and decreed specific performance. Hence, it is not authority for the principle of rescision.

The supreme court of Texas, in *O'Connell* v. *Duke*, 29 Tex. 299, professedly following *Harrison* v. *Talbot*, decreed a release of a surplus of three hundred and forty-eight acres in a tract of land conveyed as containing seven hundred and fifty acres or more, described as being all of a tract of "eight hundred and fifty acres or more" except one hundred acres sold off previously. The deed also contained a covenant, binding the vendor to refund in case the quantity should prove to be less than seven hundred and fifty acres. To ascertain the intent of the parties, parol evidence of their verbal negotiations and declarations was admitted and considered. This case goes beyond the Kentucky precedent, for the case was an exeuted one. Both treat the contracts as sales in gross and both violate the rules of interpretation laid down by this Court and by the earlier Virginia cases. It is only in cases of ambiguity that parol evidence is admissible to determine the character of the contract, and then the rule allows only evidence of the situation of the parties, the circumstances which surrounded them and their conduct in carrying the contract into execution. To permit the introduction of evidence of their conversations and declarations of intention, would work a plain violation of the rule which forbids the admission of parol evidence to contradict or vary written instruments.

These cases and a few other similar ones were examined by JUDGE GREEN in *Crislip* v. *Cain* and condemned as unsound, because they decreed compensation for excess, as upon the contract. Whether they were proper cases for rescision, he does not inquire. To this subject, his mind does not seem to have been fully directed. He does intimate, and even say, there are instances of mutual mistake as to quantity, where the sales are in gross, which warrant rescision, but he makes no analytical or critical examination

of any case of that kind. Evidently he was misled by the previous declarations of Judge Hoffman in *W. M. & M. Co.* v. *P. C. C. Co.*, who seems likewise to have accepted the proposition without investigation. He cited no authority for his position, and there is no instance of rescission on such ground in any Virginia decision prior to the separation of the state. There are many cases of abatement and compensation in sales made by the acre and in sales in gross accompanied by warranty of quantity or fraud by misrepresentation or concealment, but none based on mutual mistake as to mere quantity. In connection with *Woodlief* v. *Quesnel*, he mentions *Belknap* v. *Sealy*, 2 Duer. (N.) 579, in which a lot, sold as containing eight acres, proved to have an area of about four acres, as an authority for rescission on the ground of mutual mistake as to quantity, but he does not analyze it, or subject it to any critical examination. In that case Duer, J., dissented, and denied that there could be rescission. Emmett, J., adopted the theory of mutual mistake and rested the case on that. Bosworth, J., was satisfied that there had been a fraudulent representation by the vendor. He also thought there might be relief on the ground of mistake. That the contract was executory was deemed important.

No doubt the views previously expressed by Judge Hoffman in *W. M. & M. Co.* v. *P. C. C. Co.*, cited, were accepted by JUDGE GREEN as being sound, practically without investigation on his own account, and it is to be observed that Judge Hoffman announced the proposition apparently without having bestowed upon the question his usual care and consideration. He cites not a single authority for it and JUDGE SNYDER, in *Hansford* v. *Coal Co.*, adopts it from *Crislip* v. *Cain* without question. From these unsatisfactory cases, the Court assumed, in *Pratt* v. *Bowman*, that the principle was firmly settled in this State and adopted the classification made in *Harrison* v. *Talbot*. Hence, it seems to have gotten into our decisions more by accident than as the result of mature consideration.

It being admitted that a sale in gross is a sale at hazard as to quantity, it is a contradiction to say relief may be had on the ground of mistake, when there is a deficiency or excess. If there is no risk as to quantity, the sale is clearly not one

of hazard, nor one in gross. The risk, if any, is as to quantity and nothing else. Can a man be allowed to avoid his contract of risk, merely because the risk which he assumed has fallen upon him? If so, how can there be a sale of real estate except by the acre? If it be admitted that the risk is presumed to extend to only a reasonable amount of deficiency or excess, as held in *Harrison* v. *Talbot* and *Pratt* v. *Bowman*, under what rule can the element of unreasonableness be ascertained? To say there is a presumption that not more than the difference due to variation in instruments and inaccuracies in surveying is risked, would make every sale in gross equivelant to a sale by the acre. The idea that, under a sale in gross, such is the limit of the risk unless there be a special contract of hazard, finds no support in the earlier Virginia cases. They clearly put all sales in gross on the same footing, except those in which there are warranties of quantity, namely, those contracts in which the quantities are specified in such manner as to render the deeds or contract ambiguous on their faces as to whether a warranty of quantity was in fact intended. This principle can operate only in cases of deficiency, and there is no case in which it has been applied to an excess. To this principle and to the rules founded upon fraud, JUDGE GREEN refers all the numerous Virginia and West Virginia cases examined by him. There may be fraud on the part of the grantee, affording ground of relief against him, for an excess, but how can it be said there is a warranty by him in the deed against an excess. There may be a reservation in the deed of right to compensation for an after discovered excess, but such reservation is an express contract. "There is no doubt that where an estate is expressly sold at a certain price by the acre, and there is a deficiency in the number of acres conveyed, the purchaser will be entitled to a compensation for that deficiency. Sugden p. 230, quoting 2 Eq. Ca. Abr. 688, pl. 1. So too where the land is neither bought nor sold expressly and professedly by the acre, but both parties, in fixing the price for the land, have regard to the quantity which they suppose the estate to consist of, the same rule as to liability for deficiency will prevail. In such case the demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believe to be the subject

of their bargain: a ratable abatement of price will probably leave both in nearly the same relative situation in which they would have stood if the true quantity had been originally known. *Hill* v. *Buckley*, 17 Ves. 401; Sugden 231. Such sale must be considered as in fact and according to the intention of the parties, though not expressly, a sale by the acre. But if, on the other hand, the sale be clearly one in gross, it is a contract of hazard, in which each party takes on himself the risk of excess or deficiency, and there can be no relief afforded to either, whatever may be the actual quantity in the tract sold. *Keytons* v. *Brawfords*, 5 Leigh 47. But the court will always require clear proof that the vendee did agree to take the hazard of deficiencies on himself. *Jolliffe* v. *Hite*, 1 Call. 329; *Nelson* v. *Matthews*, 2 Hen. & Munf. 164; *Hull* v. *Cunningham's Ex'r*, 1 Munf. 333. *Russell* v. *Keeran*, 8 Leigh 13, 15. Nowhere does it appear that parol evidence is held to be admissible to prove the extent of the risk assumed in a sale in gross. The possibility of such a thing is precluded by the rules and principles deduced and stated by JUDGE GREEN in *Crislip* v. *Cain*. In every Virginia case prior to the division of the state in which there was not a sale by the acre, a sale in gross with a warranty of quantity, or a sale into which fraud had entered as a vitiating element, relief was denied, nor with the single exception of *Pratt* v. *Bowman*, has relief ever been held by this Court to be proper under any other circumstance. Sales in gross, unattended by warranty of quantity or fraud, have been uniformly treated as contracts of hazard, and that precludes any right to rescission on account of variation in quantity.

"In a sale in gross, a contract of hazard on both sides, the vendee is not entitled to relief, in case of a deficiency." *Keytons* v. *Brawfords*, 5 Leigh 39. "If a tract of land be sold for eleven hundred acres more or less at a fixed price; and it turns out, that it is less, the purchaser will not be relieved in equity." *Pendleton* v. *Stewart*, 5 Call. 1. Cabell, J., in *Russell* v. *Keeran*, 8 Leigh 19-20, says: "I am of opinion that the decree of the chancellor of the 13th December, 1828, is wholly erroneous. It declares that although the sale of land was a sale in gross, yet it was not a sale of hazard as to quantity. This is contrary to first principles; for every sale

of land in gross or by the tract is, *ex vi termini*, a sale of hazard as to the quantity; the vendor being debarred from claiming any diminution of the purchase money, in case the real quantity shall fall short of the estimated quantity.'' ''Where the contract does not specify the number of acres sold or contracted to be sold, otherwise than by the general words 'containing so many acres,' this can hardly be looked on as a warranty of the quantity, but rather as a matter of description.    *Keytons* v. *Brawfords*, 5 Leigh 48.''    *Russell* v. *Keeran*, 8 Leigh 13-15.    In *Tucker* v. *Cocke*, 2 Rand. 51, the court held:  ''A conveyance of a particular tract of land, without a specification of quantity, does not bind the vendor to warrant a particular number of acres, if there has been no false representation, and no concealment of facts within his knowledge; although there may have been an expectation in both parties, founded on documents and other evidence known to both, that the number of acres is greater than it turns out to be, upon a subsequent survey.''

The conclusion indicated by these views is supported by the great weight of authority.    It cannot be assumed that, in so many cases of large deficiencies and excesses in which relief has been denied because no warranty or fraud was established, it did not occur to the courts and counsel that it might be had by the shorter and easier remedy of rescission.    The manifest import of these decisions is that no relief can be had, in any form, respecting the subject matter of the hazard.    This is the view expressed by Chancellor Walworth in *Veeder* v. *Fonda*, 3 Paige (N. Y.) 94, 98.    He said:  ''It seems now, however, to be generally understood that where the contract has been consummated, without any fraud, misrepresentation, or concealment as to the real quantity, the courts will not inquire whether there has been an actual mistake as to the supposed quantity contained within certain specified boundaries.    But this result has been produced more from the necessity of quieting interminable litigation, than from the real equity of the principle established by the decisions.''    This is quoted and approved by the New York court of appeals in *Faure* v. *Martin*, 3 Seld. 210.    In *Winch* v. *Winchester*, 1 Ves. & Beam 375, the court held: ''Purchaser not entitled to abatement for a deficiency in quantity; the particular describing the estate, as containing

by estimation forty-one acres, be the same more or less."
Parol evidence was admitted to prove a representation by·
the vendor as to quantity.    Sir William Grant, Master of
the Rolls, said:    "As to the admissibility of the evidence, it
must depend upon the purpose, for which it is produced.
If the defendant insists, that the evidence being received he
will be entitled to have the contract performed with an abate-
ment of the price, I think it is not admissible for that pur-
pose; as the Court cannot execute in his favour a written
agreement with a variation introduced by parol testimony;
but, if he says, he was deceived by this representation, and
therefore was induced by fraud to enter into the contract,
and offers the evidence for the purpose of getting rid of such
contract altogether, for that purpose, I think, it may be re-
ceived; as, if such a declaration was made by the auctioneer,
it would undoubtedly be fraudulent and unfair in the plain-
tiffs to insist upon the execution of the contract, not giving
the defendant, the benefit of that declaration."    *Mann* v.
*Pearson*, 2 Johns. (N. Y.) 37, holds:    "A deed was deliv-
ered to M. and T., describing the lot, and as 'containing
six hundred acres, be the same more or less.'    On actual
survey, the lot was found to contain only four hundred
and twenty-one acres and one-eighth.    In an action brought
against P. on the bond, it was held, that the mention of
the quantity of acres was matter of description, and that
the delivery of the deed for the lot of land, according to its
actual and known description, was a performance of the con-
dition of the bond."    Chief Justice Kent concurred in the
opinion, delivered by Spencer, J., which said:    "The enu-
meration of quantity is not of the essence of the contract; it
is matter of description merely.    The only certainty, in the
present case, is the lot, and this alone is the subject of the
covenants."    In *Jackson* v. *Barringer*, 15 Johns. (N. Y.) 471,
it is held:    "So, where there is a lease of the farm on which
A. B. now lives, to contain eighty acres, and the farm act-
ually contains more than eighty acres, the lessor cannot re-
cover the surplus from the lessee, especially where he has
been in possession, and paid rent for a length of time."
*Jackson* v. *Defendorf*, 1 Cain. 493, holds:    "If a lot be
granted by deed, and its number specified with reference to
a map, the whole lot will pass by the deed though it there be

mentioned as containing fewer acres than it absolutely does." In *Powell* v. *Clark*, 5 Mass. 355, it is held as follows: "In a deed of conveyance of land as limited by certain monuments, lines and courses, and also as containing so many acres and rods, the words expressing the quantity do not amount to a covenant that the land contains that quantity, but are merely descriptive of the land." To the same effect see *Boar* v. *McCormick*, 1 Serg. & Rawl. (Pa.) 166; *Hall* v. *Powell*, 4 Serg. & Rawl. (Pa.) 456: *Snow* v. *Chapman*, 1 Root (Conn.) 528; *Dagne* v. *King*, 1 Yeates (Pa.) 322; *Smith* v. *Evans*, 6 Binn. (Pa.) 102. Many of these cases were actions at law, but the interpretation and construction of a contract is the same in each forum.

In *Stebbins* v. *Eddy*, 4 Mason (U. S.) 414, a suit in equity for relief in respect to a deficiency, Story, Judge, after discussing a number of cases, including an anonymous case in 2 Freem. 107, in which a man who had purchased a tract of land described as containing one hundred acres, more or less, which had turned out to contain only about sixty, was denied any relief, said: "In short, the latest cases generally concur with the doctrine laid down in the anonymous case in 2 Freeman 107. It seems to me, that there is much good sense in holding, that the words 'more or less,' or other equivalent words, used in contracts or conveyances of this sort, should be construed to qualify the representation of quantity in such a manner, that, if made in good faith, neither party should be entitled to any relief on account of deficiency or surplus. Nor am I prepared to admit that the fact, that the sale is not in gross, but for a specific sum, by the acre, ought necessarily to create a difference in the application of the principle. I do not say, that cases may not occur of such an extreme deficiency as to call for relief; but they must be such as would naturally raise the presumption of fraud, imposition or mistake in the very essence of the contract. Where the sale is fair, and the parties equally innocent, and the quantity is sold by estimation, and not by measurement, there is little, if any hardship, and much convenience in holding to the rule, *caveat emptor*."

This review of the authorities concerning the subject of sales in gross, without warranty of quantity or fraud perpetrated by either party, and the policy of the law, which im-

poses upon parties some degree of care and prudence in making their contracts, to the end that useless litigation, resulting from carelessness and lack of diligence, may be discouraged, impel the conclusion that the plaintiffs are not entitled to a rescission of the contract.    Not a few of the cases hold that, under the circumstances of this case, the plaintiffs would be precluded from any relief by their negligence.    Anon. 2 Freeman, 107.

In a sense, the mistake complained of is attributable to the negligence of the complainants.    It was their property, and, some inquiry as to the quantity, as by a survey, for instance, before disposing of it, would not have been a manifestation of extreme caution, wariness or prudence, but they made none.    Such survey would have cost them no more, perhaps, than it has cost Kay.    They discovered the excess about five years after the sale, by mere accident, as a result of Kay's survey, and now ask to be permitted to take advantage of his industry and enterprise. A leading American case, holding this to be inequitable, is *Grymes* v. *Sanders*, 93 U. S. 55, holding that:    "Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible.    The party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person."    In the opinion, it is said:    "The appellees paid their money without even inquiring of any one professing to know where the lines were.    The courses and distances specified in the deed show that a surveyor had been employed.    Why was he not called upon? The appellants sat quietly in the dark, until the mistake was developed by the light of subsequent events.    Full knowledge was within their reach all the time, from the beginning of the negotiation until the transaction was closed.    It was their own fault that they did not avail themselves of it."    In *Campbell* v. *Ingilby*, 1 DeG. & J. 392, 405, Lord Justice Turner said:    "In this case I think that the existence of the plaintiff's claim can be attributed only to his own neglect, and I am of opinion that, under such circumstances, he is not entitled to the compensation which is claimed by this bill." For similar applications of the rule, see *Manser* v. *Davis*, 6 Ves. 678; *Jennings* v. *Broughton*, 17 Beav. 234; *Atwood* v. *Small*, 6 Cl. & Fin. 338.

Though there may be at sometime, a mutual and innocent, mistake as to mere quantity in a sale in gross, of such magnitude as to enable the court to say it goes to the substance of the contract, and justify relief by way of rescission, we are firmly convinced that the principles announced in *W. M. & M. Co.* v. *P. C. C. Co.*, *Crislip* v. *Cain*, *Hansford* v. *Coal Co.*, and *Pratt* v. *Bowman*, concerning rescission for such cause, are too broad, and are contrary to the great weight of authority, as well as inconsistent with other principles firmly established in this State. Therefore, the doctrine of rescission, as therein announced, is disapproved and to this extent, said cases are overruled.

For the reasons aforesaid, the decree complained of will be reversed and the bill dismissed with costs both in this Court and in the circuit court.

*Reversed.*

BRANNON, PRESIDENT, (*concurring*):

### EXCESS.

Take the case of a deed conveying a tract of land either not specifying, or simply specifying, quantity; without any qualifying words affecting the quantity, there being no fraud. Shall the grantor have either pay or rescission on the ground of excess in quantity?

Such a deed is a sale in gross, that is, one of hazard or risk as to quantity. *Crislip* v. *Cain*, 19 W. Va. 438; *Depue* v. *Sergent*, 21 W. Va. 326; *Hansford* v. *Coal Co.*, 22 W. Va. 70; *Pratt* v. *Bowman*, 37 W. Va. 715. The statement of quantity, in such a deed, is descriptive of the tract, not a covenant or warranty of quantity. 4 Kent 466; *Caldwell* v. *Craig*, 21 Grat. 132. To allow pay for excess or rescind would deny the essential character of the deed given it by law, that of hazard, the law would contradict itself. It would, in one breath, say that the deed is one of hazard, and in the next breath say, that it is one of warranty of quantity; for how can either pay or rescission be given unless there is warranty or covenant of quantity? Furthermore, to allow such pay or rescission would deny the legal character of the deed contrary to the old rule that a contract in writing shall not be contradicted, altered or varied by oral evidence. The law stamps such a deed as one in gross. You allow evidence

to contradict this. You allow evidence to prove mistake as to quantity, when the deed, as construed by law, says that the grantor was not mistaken, but took the risk as to quantity; that he conveyed the tract, whether more or less in quantity, for a given sum. The law makes the deed have one effect; oral evidence makes it have another. *Depue* v. *Sergent*, 21 W. Va. 326, is cited to show that this cannot be done in such case by oral evidence. If the grantor intended to make quantity of the essence of the contract, he would have made it a conveyance by the acre, or inserted a clause for compensation for excess; but he made a sale *in gross.* Where there is deficiency, and the grantor has stated in the deed that the tract contains a certain quantity, that is a different case, under our decisions, from excess. Under those decisions it is because, and only because, of that statement of quantity that deduction from purchase money is made for deficiency. But as to excess, that reason does not exist, since the grantee has made no statement of quantity. In the case of claim for deficiency, it is sometimes, only sometimes, granted because of *fraud* in the grantor in making such statement; but there is no such fraud imputable to the grantee, no such basis for decree against him on account of excess. JUDGE GREEN mentions this in *Depue* v. *Sergent*, *supra*, and the clear jurist, Judge Roane, said in *Jolliffe* v. *Hite*, 1 Call. p. 312, "with regard to the case of excess, it may not follow, of course, that when there is abatement for deficiency there should be payment for the excess." For deficiency in our cases relief is granted for legal fraud. If you regard the statement of quantity a warranty (you cannot), while the vendee could get relief for loss, the vendor could not for excess. There is difference between excess and deficiency, whether you regard relief as based on fraud or warranty. But the argument is made that though no fraud is chargeable to the grantee, there is *mutual mistake*, and that calls for relief. I respond that the cases say that compensation for excess or abatement cannot be made on the theory of mistake, because that would fly in the face of the deed, which speaks a sale in gross. JUDGE GREEN says so in *Crislip* v. *Cuin*, 19 W. Va. 512 and point 10 in syllabus. Hillard on Vendors, 328 says: "The general principle is laid down, that the vendor of land, as containing a certain quantity, *more or less*, when he knows

from the title-deeds or otherwise that it contains a much less quantity, is in equity bound to make good the difference. But, where a contract has been consummated without any fraud, misrepresentation or concealment as to the quantity, the Court will not inquire whether there has been a mistake upon that point. Thus if the vendor sells, and the vendee buys, a tract of land, for so many acres, more or less, and it turns out, upon a survey, that there is less than the estimated quantity, the buyer shall not be relieved in equity. So it is said, the cases in which equity interferes, where the quantity of the land exceeds or falls short of that specified in the deed or contract, or those in which the sale has been made *by the acre or foot;* or where there has been fraud or wilful misrepresentation on the part of the party against whom relief is sought.'' I repeat that pay for excess or loss cannot stand on the idea of mistake, but only on fraud, actual or legal. But it is said that while it is true that money compensation cannot be made because of mistake, yet rescission of the deed can be. It is strange to say that you cannot decree compensation for mistake, because the deed is a sale in gross, yet you can take the vendee's land from him for that mistake. Do you not by rescission deny the legal effect of the sale as one of hazard just as much as you would by decree for money compensation? Do you not thus ignore that legal effect of the deed as one in gross or of hazard? You would, in reason, equally ignore the law of the deed in either case. "Whether the case be one of excess or deficiency, the mistake is not in the substance of the contract, but in relation to the very risk in the contemplation of parties.'' In 21 Grat. p. 137, *Caldwell* v. *Craig.* For the position that in case of such a deed there can be neither compensation nor rescission for excess, in absence of fraud, I cite *Jolliffe* v. *Hite*, 1 Call. 262; *Tucker* v. *Cocke*, 2 Rand. 51, 66, where Judge Green says that quantity in such case is not of the substance of the contract; that the substance is the tract; that if the land is sold as on Paint Creek, whereas it is elsewhere, that is a mutual mistake as to the "substance"—and there will be rescission; but that mistake in quantity is not in "substance," but covered by the hazard. *Pendleton* v. *Stewart*, 5 Call. 1; *Keyton* v. *Brawfords*, 5 Leigh 39, 48; *Reed* v. *Patterson*, 7 W. Va. 263; 2 Warvelle on Vendors, pp. 974, 976; Dart on Vendors, 304.

I refer to 29 Am. & Eng. Ency. L. (2 Ed.) 635, saying that excess in quantity "does not entitle him either to rescission, to reconveyance of excessive quantity, or to compensation." See pages 625, 637. On p. 627 we find many cases cited for the text, "The theory on which relief is denied is, that the purchaser gets the specific land which he contracted to buy, and must be deemed to have assumed the risk of deficiency." In *Hardin* v. *Kelley*, 89 Va. 333, our holding is sustained. It says that where a tract is conveyed for a certain sum within certain bounds, stated to convey a certain quantity, there can be no recovery for excess.

But do our cases hold that in cases of excess there can be relief? They say there can be no money compensation decreed, unless the purchaser is willing to pay; but some say there may be rescission. I contend that *Western M. & M. Co.* v. *Peytona*, 8 W. Va. 406, is *obiter* as to its recognition of right of rescission. It did not enter into the decree; the decree is not based on that; it did not even allow an amendment as to it. (Bouvier L. Dict., word "Dictum".) The opinion shows that it was not intended to be decided. The same may be said of *Hansford* v. *Coal Co.*, 22 W. Va. 70. Certainly expressions in *Crislip* v. *Cain*, allowing rescission for excess, were *obiter*, it being a case of deficiency, not excess. As to *Pratt* v. *Bowman*, 37 W. Va. 715, we were in error in holding a right to rescission for excess. We were misled by the cases just mentioned. Argument and reargument have brought this matter of excess to close scrutiny in the present case. Those cases were squarely assailed and a demand made for reconsideration of them as regards this subject. I admit reluctance to depart from a former case— even one, and there is but one—; but the law ought to be laid down right when it is to operate constantly in daily transactions in future. Shall we persevere in error when we believe it to be error, and it is challenged as error?

Is this ruling practically unjust? When quantity is given in deeds, who thinks of its being warranted? When that is designed the sale is made by the acre. Judge Tucker said in *Keytons* v. *Brawford,* 5 Leigh, p. 48, as many of the books say: "I have looked upon such mention of quantity as, in general, matter of description only, and not of itself as giving a character of a contract by the acre. I am satisfied

that such a thing is rarely dreamed of by those who execute deeds." Much authority says that mere statement of quantity in a deed, in connection with boundary, is only description, not warranty of quantity. 4 Kent 466; *Caldwell* v. *Craig*, 21 Grat. 132; *Wood* v. *Murphy*, 47 Mo. App. 539; *Jenkins* v. *Bolgiano*, 53 Md. p. 420; 29 Am. & Eng. Ency. L. (2d Ed.) 628; *Rogers Case*, 76 Ala. 529.

### DEFICIENCY.

Though deficiency is not involved I will say that much authority in Virginia and elsewhere can be found denying compensation in case of such a deed as is involved in this case, because the sale is in gross. But we have numerous cases holding that in such cases there may be, under circumstances, compensation for deficiency, where the grantor assumes to represent in the deed the tract to contain a certain quantity. *Crislip* v. *Cain*, 19 W. Va. 438; *Anderson* v. *Snyder*, 21 *Id.* 632; *Hansford* v. *Coal Co.*, 22 *Id.* 70; *Sine* v. *Fox*, 33 *Id.* 521; *Depue* v. *Sergent*, 21 W. Va. 326. They hold that where a deed states a tract to contain a fixed quantity, if that was relied on and induced the purchase, it is ground of compensation for deficiency, as the statement of quantity, whether made in ignorance of the true quantity or not, is, in law, *fraud.* Such is not the case as to excess. Where a deed makes no statement of quantity, but conveys the tract, there is no compensation. *Allen* v. *Shriver*, 81 Va. 174.

I confess that I do not see that *Crislip* v. *Cain*, is sound in holding that where a deed merely states quantity it *prima facie* gives right either to abatement or rescission for deficiency, in absence of actual fraud. When once the law puts upon the deed the seal of a sale in gross, the statement of quantity is merely further description of the tract, not a warranty of quantity, and therefore cannot be the ground of relief. The law does treat that statement of quantity in that light. See citations above. It is conceded in the *Crislip Case* that mutual mistake of quantity is not the ground of relief, but that the statement of quantity is because of a legal fraud. How can this be when the deed is a sale in gross? By oral evidence you deny the writing. But there is a difference between excess and deficiency where the deed states

quantity. There is but one case holding that excess gives right to relief; but many following *Crislip* v. *Cain.* I would yield to them only on the principle of *stare decisis.* They are numerous, but they are not cases of excess. It does seem to me that this matter turns on two questions: 1. Is the deed one of sale in gross? 2. Is the statement of quantity in it warranty of quantity? The law says that such a deed speaks a sale in gross, and I assert that the mere statement of quantity is not of the substance, not a statement of a fact as on the grantor's personal knowledge, not made to induce the grantee to purchase, is not a warranty. When the parties intend quantity of the substance—when one states the quantity as within his knowledge, and the other buys on its faith, they say it is a sale by the acre, or in some cases to make quantity of the substance of the contract; but the incidental statement of quantity in description is not *prima facie* of the substance—the tract is the substance. The fact that the parties have not sold by the acre or otherwise made quantity important shows that they did not intend the statement of quantity as a warranty. (19 W. Va. 480, 481.) If the party knows the statement is false, this is actual fraud; but if he states quantity, not knowing it to be false, or does not say it is true on his own knowledge, when he knows the statement is not true, relief is given for deficiency, though the deed is in gross, because of legal fraud; when he says he knows the quantity is correct, you relieve for warranty; but when neither is the case, there is no rescission, because the deed is in gross.

It seems not necessary to say that I have not been speaking of sales by the acre. I desire to be understood as speaking of deeds passing legal title, not of executory contracts or what equity would do in a suit for specific performance.