513 S.E.2d 921

CENTRAL WEST VIRGINIA REGIONAL AIRPORT AUTHORITY, a Public Agency, and the Kanawha County Commission, a Public Agency, Plaintiffs,

v.

The WEST VIRGINIA PUBLIC PORT AUTHORITY, Defendant.

No. 25628.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1999.

Decided Feb. 5, 1999.

Franklin D. Cleckley, Esq., Morgantown, West Virginia, Thomas A. Heywood, Esq., Jennifer S. Fahey, Esq., Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, Attorneys for Defendant.

Charles R. Bailey, Esq., Richard L. Earles, Esq., Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorneys for Plaintiff Regional Airport Authority.

Marc J. Slotnick, Esq., Charleston, West Virginia, Attorney for Plaintiff Kanawha County Commission.

PER CURIAM:

This case arises upon certified question from the Circuit Court of Kanawha County and concerns interpretation of a provision found in the West Virginia Port Authority Act, West Virginia Code §§ 17–16B–1 to –22 (1996). The statutory question presented is whether the Central West Virginia Regional Airport Authority[1] (hereinafter "Regional Authority") qualifies as the "affected public agency" within the meaning of West Virginia Code § 17–16B–6(b)(15). The circuit court answered the certified question in the affirmative. After closely examining this issue, we determine that, in the context of the case before us, the Regional Authority is not the "affected public agency" that the Legislature was referring to as that phrase is used in West Virginia Code § 17–16B–6(b)(15).

While the dispute concerning the selection of a regional airport site by the West Virginia Public Port Authority (hereinafter "Port Authority") involves an admittedly lengthy and convoluted procedural background, the nature of the current dispute is exceedingly direct. We emphasize from the outset that the issue of what is the most desirable site location for a regional airport is not in any way before this Court, and indeed nothing contained herein should or does reflect any opinion of this Court with respect to that decision. The issue before this Court is limited to the specific question of whether the Regional Authority has a role to play in the site selection process based on its position that it qualifies as an "affected public agency."

In an effort to forestall the Port Authority's selection of a specific site at its meeting scheduled for December 2, 1998, the Petitioners, the Regional Authority and the Kanawha County Commission, sought injunctive relief in the circuit court.[2] Judge Kaufman held a

hearing concerning the request for preliminary injunctive relief on December 1, 1998. At the conclusion of the hearing, the circuit court issued a preliminary injunction enjoining the Port Authority from making a site selection at its December meeting. The lower court predicated its ruling on language found within West Virginia Code § 17–16B–6. Within that statutory provision, which delineates the numerous powers extended to the Port Authority, is language in subpart fifteen of subsection b which reads, in pertinent part:

> The authority is hereby designated and empowered to act on behalf of the state and to represent the state in the planning, financing, development, construction and operation of any port project or any facility related to any such project, *with the concurrence of the affected public agency.* Other state agencies and local governmental entities in this state, including the West Virginia housing development fund, shall cooperate to the fullest extent the authority deems appropriate to effectuate the duties of the authority.

W.Va.Code § 17–16B–6(b)(15). In its order granting injunctive relief, Judge Kaufman ruled that the Regional Authority is "the affected public agency" within the meaning of West Virginia Code § 17–16B–6(b)(15). Through certified question, the Port Authority seeks a determination from this Court that the Regional Authority is not the "affected public agency" intended by the language of West Virginia Code 17–16B–6(b)(15).

■ The Port Authority takes the position that a review of the legislative origin of the phrase "affected public agency" compels the conclusion that such phrase was initially intended to refer to either the Federal Aviation Administration (hereinafter "FAA") or a multi-state compact.[3] When the legislation cre-

---

1. The Regional Authority was formed pursuant to the enabling statute found in West Virginia Code § 8–29–1 (1998), which permits municipalities and contiguous counties to create and establish authorities for the purpose of constructing and operating regional airports. The Regional Authority is comprised of the City of Charleston, Boone County, Lincoln County, Putnam County, and Nicholas County.

2. The Regional Authority and the Kanawha County Commission filed a verified complaint for

injunctive relief on November 24, 1998, seeking both preliminary and permanent injunctive relief to prohibit the Port Authority from making a site selection at its December meeting.

3. An example of a multi-state compact that the Port Authority cites is ORSANCO or the Ohio River Valley Sanitation Commission, an interstate commission established by compact in 1948 for the purpose of controlling and abating pollution in the Ohio River. West Virginia is among the eight states that comprise that compact.

ating the Port Authority was first enacted in 1989, the language at issue was not included among the various statutory provisions.[4] The Port Authority places much significance on the fact that the "affected public agency" phraseology has its origin in a separate piece of legislation known as the West Virginia Wayport Authority Act (hereinafter "Wayport Authority"). *See* W.Va.Code § 17–16C–1 to –16 (1990) (repealed 1991). In creating the Wayport Authority, the Legislature was acting in anticipation of having a West Virginia location selected by the federal government for one of six anticipated "wayports"—airports designated for the joint purpose of transporting both people and cargo that were to be located in rural areas of the country. *See* W.Va.Code § 17–16C–4. Apparently federal interest in the "wayport" concept quickly waned,[5] and the legislation authorizing the Wayport Authority was repealed in 1991.

When the Wayport Authority Act was repealed, certain provisions of that Act were merged into the Port Authority Act. One such provision was the statutory language previously found in West Virginia Code § 17–16C–6(11), which reads, in pertinent part:

> If the state is selected as a site for a wayport, the authority [Wayport] is hereby designated and empowered to act on behalf of the state to represent the state in the planning, financing, development, construction and operation of the project or any facility related to the project, with the concurrence of the affected public agency. Other state agencies and local governmental entities in this state, including the West Virginia housing development fund, shall cooperate to the fullest extent the authority deems appropriate to effectuate the duties of the authority.

The above language was modified only slightly before its inclusion in the Port Authority Act as subpart 15 to subdivision 6(b) of chapter 17, section 16B. The Legislature omitted the introductory clause—"If the state is selected as a site for a wayport"—and modified the term "project" by inserting the term "port" to describe the same. The remaining language was inserted intact when West Virginia Code § 17–16B–6 was amended in 1991.

The Port Authority argues that because the statutory phrase at issue had its genesis in the Wayport Authority Act, the current meaning of that phrase can best be deciphered by examining the meaning attached to such phrase when it was part of the Wayport Authority Act.[6] The Port Authority contends that "affected public agency" is a reference to the federal agency that has regulatory authority over the specific project in question. In reaching this conclusion, the Port Authority suggests that identification of the "affected public agency" requires reference to the preceding statutory language concerning "planning, financing, development, construction and operation." W.Va.Code § 17–16B–6(b)(15). The Port Authority proposes that the "affected public agency" is that entity without whose concurrence the "project" cannot be planned, financed, developed, constructed, and operated. Under this line of reasoning the Port Authority maintains that the phrase "affected public agency," as those terms were used in the Wayport Authority Act, could refer only to the FAA or possibly a multistate compact. With regard to its current location in the Port Authority Act, the Port Authority posits that such phrase refers to either the FAA or the United States Army Corps of Engineers.[7] In this particular case, the Port Authority posits that the FAA is the regulatory agency whose concurrence is necessary to permit the devel-

---

**4.** The language under consideration was added through amendment in 1991.

**5.** Congress failed to establish a Wayport Commission.

**6.** This argument is not helpful, however, because the meaning of the phrase "affected public agency" is not any clearer under the Wayport Authority Act than in its current location within the Port Authority Act.

**7.** By way of illustration, the Port Authority states that the U.S. Army Corps of Engineers has regulatory authority over issues concerning ports other than airports and the FAA necessarily has regulatory authority over issues dealing with airport projects under consideration by the Port Authority. As the Port Authority observes, the Port Authority Act governs all ports (e.g., rail, water, road) and not just airports. *See* W.Va. Code § 17–16B–5 (defining "port" to include, *inter alia*, airports, wayports, terminals, buildings, roadways, rails, and rail lines).

opment and construction of a new regional airport.

■ The reasoning employed by the Port Authority not only appears somewhat circular in nature, it fails to take into consideration the entirety of the statutory provision at issue and indeed the entire statutory context in which such language appears. As we stated in syllabus point three of *Pristavec v. Westfield, Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990),

> "In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962).

By limiting their focus on the phrase "the affected public agency" without regard to its relationship to all the language in subpart fifteen and without viewing subpart fifteen in the statutory context of the entirety of West Virginia Code § 17–16B–6(b), the parties appear collectively misguided with regard to the legislative intent concerning the statutory language at issue.

Even a cursory review of West Virginia Code § 17–16B–6(b) reveals that the Legislature was extending an extremely broad grant of powers to the Port Authority. After first reposing in the Port Authority the responsibility of "determin[ing] the needs of the state as a whole in terms of transportation," which includes reviewing "feasibility studies" to "determin[e] the best site locations for transportation centers," the Legislature delineated an expansively drawn list of powers and duties. W.Va.Code § 17–16B–6(a)(1), (b)(1)–(21). Among those many powers are the power to sue and be sued and to enter into contracts. W.Va.Code § 17–16B–6(b)(1). The Port Authority has the power to "[a]cquire, purchase, install, lease, construct, own, hold, operate, maintain, equip, use and control ports ... necessary or incident to carry out the provisions of this article...." W.Va. Code § 17–16B–6(b)(2). The Legislature has granted the Port Authority the right to apply for federal, state, municipal, and private funds. W.Va.Code § 17–16B–6(b)(3). The

Port Authority is charged with the duty to meet with similar bodies from other states for the purpose of establishing "an interstate or intermodal transportation network." W.Va.Code § 17–16B–6(b)(6). The Port Authority has the power to "enter into agreements, contracts or other transactions with any federal, state, county, municipal agency or private entity." W.Va.Code § 17–16B–6(b)(7). Critically, the Port Authority "is hereby designated and empowered to act on behalf of the state on submitting siting proposals for public ports." W.Va.Code § 17–16B–6(b)(10). As a complement to the preceding power concerning site proposals, the Legislature expressly granted the Port Authority the power *"to take all steps appropriate and necessary to effect siting, development and operation of public ports within the state."* W.Va.Code § 17–16B–6(b)(11) (emphasis supplied). The Port Authority is authorized to receive federal grant moneys and to "receive and accept aid or contributions from any sources." W.Va.Code § 17–16B–6(b)(13). The Port Authority is both authorized to acquire land, property, rights of way, necessary easements or other land interests necessary for the construction or operation of any project and the Authority has the right of eminent domain to accomplish its purposes. W.Va.Code § 17–16B–6(b)(14). The issuance of revenue bonds is expressly authorized for the purpose of financing the port projects. W.Va.Code § 17–16B–6(b)(18). Finally, the Legislature granted the Authority not once, but twice, the power "to do any and all things necessary to carry out and accomplish the purposes of this article." W.Va.Code § 17–16B–6(b)(18), (21). Significantly, none of these broad grants of authority contain any limiting language that would suggest veto power over such respective grants of power to an affected state agency.

Against this broad grant of powers, we examine the claim of the Regional Authority and the Kanawha County Commission that the inclusion of the terminology "affected public agency" in one subpart of the whole statutory provision refers to the Regional Authority in this case. Their position is simply that, because their interests are necessarily affected by a site proposal[8] that ex-

---

8. While the Port Authority was originally considered

ering six different site proposals for the regional

cludes their facility (Yeager Airport), they qualify as the requisite "affected public agency"[9] without whose concurrence the site selection process cannot continue. As tempting as it might be from a provincial economic standpoint[10] to view the Regional Authority as the "affected public agency," such interpretation defies logic when viewed against the statutory scheme as a whole. Why would the Legislature convey an indisputably broad grant of power to the Port Authority and then permit any of a host of foreseeable entities claiming status as an "affected public agency" to permanently halt a site selection process?

Interpretation of the phrase "with the concurrence of the affected public agency" requires an initial and fundamental recognition that *each* of the twenty enumerated subparts to section 6(b) addresses a specific grant of *power* from the Legislature to the Port Authority,[11] which, when read together, constitute a broad and far-reaching grant of authority for the purpose of formulating and implementing statewide plans concerning "the best site locations for transportation centers, terminals, ports and harbors." W.Va.Code § 17–16B–6(a)(1). In the case of subpart fifteen, the specific grant of power is the authority of the Port Authority to act as an agent on behalf of both the state and state agencies with regard to the "planning, financing, development, construction and operation of any port project." W.Va.Code § 17–16B–6(b)(15). The extension of this grant of agency was obviously intended to apply to those many situations where the approval of a particular state agency might be required to effect a host of foreseeable transactions. To illustrate, rather than require the Depart-

ment of Highways to appear at a real estate closing concerning property that the Port Authority has deemed it necessary to acquire for a particular project, the Port Authority is granted the power to sign documentation on behalf of the Department of Highways with the Department's approval.

A review of the entire statutory scheme envisioned by West Virginia Code § 17–16B–6(b) in no way supports the Plaintiffs' contention that the Legislature was conferring veto power upon any state agency by its insertion of the phrase "with the concurrence of the affected public agency." Critically, that phrase only appears in subpart fifteen of West Virginia Code § 17–16B–6(b). If, in fact, the Legislature intended to give such a veto power to state agencies, it would have been included in subpart eleven, which specifically conveys the right of site selection authority to the Port Authority. It is significant that subpart eleven is devoid of any language that extends approval/veto power to any separate entity.

■ The contention put forth by the Regional Authority and the Kanawha County Commission that the phrase at issue implies a legislative intent to repose a countervailing power of approval in state agencies such as themselves is simply untenable when viewed in the context of the whole statute. " 'It is a cardinal rule of construction governing the interpretation of statutes that the purpose for which a statute has been enacted may be resorted to by the courts in ascertaining the legislative intent.' Syl. Pt. 4, *State ex rel. Bibb v. Chambers*, 138 W.Va. 701, 77 S.E.2d 297 (1953)." Syl. Pt. 1, *State ex rel. M.L.N. v. Greiner*, 178 W.Va. 479, 360 S.E.2d 554 (1987). It cannot be disputed that the pur-

---

airport, among them Yeager Airport and Tri-State Airport, the Port Authority was to decide between site proposals at the December 2, 1998, meeting which would locate the proposed regional airport in either Lincoln or Putnam County.

9. There is no dispute that the Regional Authority qualifies as a public agency based on both statutory provisions and case law. *See* W.Va.Code § 8–29–2 (1998) (designating regional airport authorities as public corporations); *Meisel v. Tri-State Airport Auth.*, 135 W.Va. 528, 533–34, 64 S.E.2d 32, 36 (1951) (using terms "public agency" and "public corporation" interchangeably with regard to Tri-State Airport Authority); *accord Blennerhassett Historical Park Comm'n v.*

*Public Service Comm'n*, 179 W.Va. 250, 366 S.E.2d 758 (1988) (quoting statutory language using terms "public corporation" and "public agency" synonymously).

10. The Plaintiffs maintain, and there does appear to be validity to their contention, that the establishment of a regional airport outside of Kanawha County will certainly have a negative impact on the residents of such county in terms of jobs, convenience, and tax dollars.

11. There are in fact 21 subparts to section 6(b), but the last one is a general rather than a specific grant of power. *See* W.Va.Code § 17–16B–6(b)(21).

poses of the Port Project Act could never be accomplished if the Legislature were to give all affected public agencies a veto power over port projects. Even the phraseology itself suggests otherwise. The Legislature did not draft this provision to read *provided* the "affected state agency" grants its concurrence and yet, that is the interpretation that the Plaintiffs advance. The Legislature's choice of the term "with" rather than a term such as "provided" signifies a distinct meaning. The Legislature was not extending the opportunity to public agencies such as the Regional Authority to withhold their permission for a given project. To the contrary, the Legislature was granting the power of agency to the Port Authority to act on behalf of such public agencies after obtaining their approval, when the approval of such agencies is required to accomplish various transactions incident to a particular port project. This interpretation is the only one that makes sense. One need only to proceed to the next sentence in subpart fifteen to see further evidence of the fact that the Legislature was seeking to obviate against the possibility that a state agency might prove to be a roadblock to a port project. The second sentence in subpart fifteen requires that "[o]ther state agencies ... shall cooperate to the fullest extent the authority deems appropriate to effectuate the duties of the authority." W.Va.Code § 17–16B–6(b)(15). This mandate concerning cooperation of all "other" state agencies [12] is consistent with the broad grant of powers given to the Port Authority by the Legislature.

Simply stated, principles of both logic and of statutory construction bode strongly against the Legislature's creation of a state agency equipped with a broad panoply of powers necessary to accomplish the legislative objective of advancing this state's transportation systems and then, in an arguably innocuous clause—not even a separately enumerated provision—vitiation of that very grant of power by permitting any "affected state agency" to withhold its approval at any stage of the "planning, financing, development, construction and operation of any port project." W.Va.Code § 17–16B–6(b)(15). Clearly, the phrase "with the concurrence of the affected public agency" is meant to modify the preceding portion of the sentence wherein such phrase is found. And that precedent language concerns the grant of agency status to the Port Authority to act on behalf of both the state and affected state agencies. When viewed as against the entirety of the statutory provision, as opposed to a narrowly-focused and inflated emphasis on specific terms, it is clear that the power extended by the Legislature in that subpart was agency-like authority for the Port Authority and *not* the power for public agencies to completely thwart the Port Authority's efforts with regard to "planning, financing, development, construction and operation" of a regional airport. W.Va.Code § 17–16B–6(b)(15). Accordingly, we determine that the phrase "affected public agency" does not refer to the Regional Authority within the context of this particular dispute.

Having answered the certified question, this case is dismissed from the docket of this Court.

Certified question answered; case dismissed.

---

**12.** The use of "other" in reference to state agencies further refutes the conclusion reached by the Port Authority that "affected public agency" is a federal agency such as the FAA.