558 S.E.2d 290

**Irene WALKER, Plaintiff Below, Appellant,**

v.

**John DOE, Defendant Below, Appellee.**

No. 29290.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Oct. 25, 2001.

Concurring and Dissenting Opinion of Justice Starcher Nov. 1, 2001.

Concurring and Dissenting Opinion of Chief Justice McGraw Jan. 11, 2002.

E. Dixon Ericson, John R. Mitchell, Sr., John R. Mitchell, L.C., Charleston, for the Appellant.

Sabrena A. Olive, Ellen R. Archibald, Kesner, Kesner & Bramble, Charleston, for the Appellee.

ALBRIGHT, Justice.

Appellant Irene Walker challenges the September 25, 2000, ruling of the Circuit Court of Fayette granting summary judgment to Appellee Allstate Indemnity Company ("Allstate"),[1] appearing and defending in the name of an unidentified motorist. Appellant argues that the circuit court erred in relying on this Court's decision in *Dalton v. Doe*, 208 W.Va. 319, 540 S.E.2d 536 (2000), in which we affirmed the lower court's decision not to apply retroactively the holding in *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997), establishing certain conditions under which the absence of direct physical contact does not bar recovery in uninsured motorist actions.[2] In seeking a reversal of the lower court's ruling, Appellant asserts that both the per curiam nature of *Dalton* and this Court's pronouncements regarding per curiam opinions proscribe any reliance on *Dalton* by the circuit court. Expressly rejecting Appellant's attempt to unduly limit

---

**1.** Though the summary judgment order refers to Allstate Insurance Company, Appellee clarified in its brief that Allstate Indemnity Company is the insurer involved in this case.

**2.** *See* W. Va.Code § 33–6–31(e)(iii) (1998) (Repl. Vol.2000).

the precedential value attached to this Court's per curiam decisions, we affirm the lower court's decision.

## I. Factual and Procedural Background

Following Appellant's involvement in a motor vehicle accident on October 4, 1997, in which her vehicle was allegedly forced off the road by an unidentified motorist, she sought and was denied uninsured motorist coverage under an automobile insurance policy issued by Allstate. Appellant then instituted an uninsured motorist cause of action on September 29, 1999. *See* W. Va.Code § 33–6–31(e)(iii) (1998) (Repl.Vol.2000).

While the underlying case was in the discovery phase, this Court issued the *Dalton* decision.[3] Allstate filed a motion for summary judgment on July 31, 2000, arguing that under *Dalton* there was no insurance coverage given this Court's clarification that *Hamric* was to be applied on a prospective basis only. After hearing arguments on August 10, 2000, concerning the summary judgment motion, the lower court ruled in favor of Allstate on September 5, 2000. Through this appeal, Appellant seeks a reversal of that ruling.

## II. Standard of Review

■ Our review is de novo as the order appealed from is a summary judgment ruling. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III. Discussion

### A. *Hamric* and *Dalton*

■ While the issue before us is limited to whether the lower court erroneously applied *Dalton* in ruling on Allstate's summary judgment motion, a recitation of the law declared in *Hamric* enables a full appreciation of the arguments raised by Appellant. *Hamric* presented by certified question the issue of whether a pedestrian who was injured while taking action to avoid being hit by an unidentified vehicle could recover under this state's uninsured motor vehicle statute.[4] To resolve this question, we found it necessary to define the phrase "close and substantial physical nexus," which we had used previously to explain the "physical contact" requirement of West Virginia Code § 33–6–31(e)(iii). *See State Farm Mut. Auto. Ins. Co. v. Norman,* 191 W.Va. 498, 446 S.E.2d 720 (1994). After recognizing that "absolute enforcement of the physical contact requirement is contrary to public policy," we determined in *Hamric* that "the physical contact requirement should not bar recovery when there is sufficient independent third-party evidence to conclusively establish that the sequence of events leading to an injury was initially set in motion by an unknown hit-and-run driver or vehicle." 201 W.Va. at 620, 499 S.E.2d at 624. In accordance with these principles we held in syllabus point three of *Hamric* that

A close and substantial physical nexus exists between an unidentified hit-and-run vehicle and the insured for uninsured motorist insurance coverage under W.Va. Code § 33–6–31(e)(iii) when an insured can establish by independent third-party evidence to the satisfaction of the trial judge and the jury, that but for the immediate evasive action of the insured, direct physical contact would have occurred between the unknown vehicle and the victim.

201 W.Va. at 616, 499 S.E.2d at 620.[5]

Because the decision announced in *Hamric* did not address whether it was to be applied prospectively or retroactively, the appellant in *Dalton* sought a ruling from this Court on the issue of *Hamric*'s reach. After applying the factors announced in *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979),[6] we concluded in *Dalton* that "the

---

**3.** *Dalton* was issued on June 16, 2000.

**4.** *See supra* note 2.

**5.** As a corollary to this holding, we announced in syllabus point four of *Hamric* that

[t]he "but for" test is satisfied and the uninsured motorist claim can go forward only if the injured insured presents independent third-party testimony by disinterested individuals which clearly shows the negligence of an unidentified vehicle was a proximate cause of the accident.
201 W.Va. at 616, 499 S.E.2d at 620.

**6.** Those six factors are as follows:

First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such

*Hamric* decision should be given only prospective effect." [7] 208 W.Va. at 323, 540 S.E.2d at 540.

Despite the clear pronouncement in *Dalton* regarding the prospective effect to be accorded *Hamric*, Appellant urges this Court to find error in the lower court's reliance on *Dalton*. In support of her position, Appellant argues that a per curiam decision, like *Dalton*, has no precedential value beyond the facts of the case resolved therein. Secondarily, Appellant urges this Court to ignore *Dalton* and apply *Hamric* since the remedial principles underlying *Hamric* are similarly present in her case.

### B. Per Curiam Decisions

We first address the primary contention raised by Appellant—that a per curiam decision has no precedential value. Appellant acknowledges the source of her authority for this position as being footnote four from *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992), which stated the following:

It is important to point out this Court's traditional approach to *per curiam* opinions. *Per curiam* opinions, such as *Rowan*, are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta*. A *per curiam* opinion that appears to deviate from generally accepted rules of law is not binding on the circuit courts, and should be relied upon only with great caution. Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal

with similar cases. We do not have such a specific practice, but instead use published *per curiam* opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion. *Id.* at 201, n. 4, 423 S.E.2d at 604 n. 4.

At the outset of this discussion, we acknowledge that the quoted footnote language from *Lieving* has caused much confusion concerning the use of per curiam decisions. Through this opinion we intend to address how this Court views per curiam opinions and, in so doing, we aim to extinguish any lingering doubts regarding the precedential value of such opinions. Before addressing the significance of per curiam decisions in West Virginia, we note that there is little consensus within the legal community regarding the use of per curiam decisions. To illustrate this point, we note that the definition provided by *Corpus Juris Secundum* states that a " '[p]er curiam opinion' is an opinion of the court in a case in which the judges are all of one mind, and which is so clear that it is not considered necessary to elaborate it by an extended discussion." 21 C.J.S. *Courts* § 170 (1990); *accord* 20 Am. Jur.2d *Courts* § 39 (1995) ("Where all the judges of a court agree on the opinion and the question involved is clear, the court may issue a 'per curiam' opinion with limited discussion of the issue in the opinion"). Black's Law Dictionary, cited by the lower court in its order, defines "per curiam" as meaning "[b]y the court" and further indicates that it is "[a] phrase used to distinguish an opinion of the whole court from an opinion written by

---

as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the

greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions. 163 W.Va. at 332–33, 256 S.E.2d at 880–81, syl. pt. 5, in part.

7. In finding that the *Bradley* factors militated against a retroactive application of *Hamric*, we discussed how *Hamric* involved substantive law; it involved substantial public policy issues arising from statutory interpretations that were a clear departure from previously established law; and the fact that other jurisdictions had applied similar changes in the physical contact requirement on a prospective basis only. *Dalton*, 208 W.Va. at 323, 540 S.E.2d at 540.

any one judge." Black's Law Dictionary 1136 (6th ed.1990).

In contrast to this academic notion that per curiam opinions are limited to those decisions in which the court is of one mind, we note the practice of the United States Supreme Court to use per curiam opinions in those cases "when the justices are very badly divided" and can only agree to the judgment and basic holding of the case. Stephen L. Wasby, Steven Peterson, James Schubert & Glenn Schubert, *"The Per Curiam Opinion: It's Nature and Functions,"* 76 Judicature 29, 30 (June/July 1992); *see, e.g., Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Although the United States Supreme Court initially used per curiam opinions solely in conjunction with instances of " 'indisputably clear' substantive law," that is no longer the situation as the high court uses this type of opinion for a variety of cases,[8] including those cases where the court cannot reach a consensus as to the reasoning underlying a particular decision.[9] Judicature, *supra,* at 30.

With this brief explanation, we proceed to address how per curiam decisions have been viewed by the West Virginia courts and bar in the past and how they are to be viewed from this point forward. Our apparently unique constitutional provision,[10] which requires the use of syllabus points in our opinions,[11] has impacted how this Court distinguishes between those opinions that are issued under a particular justice's name and those that bear the per curiam designation. Article VIII, section 4 of our state constitution provides that: "[I]t shall be the duty of the court to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case." At some point in time, this Court began distinguishing between its signed opinions[12] and per curiam decisions based upon the existence of new points of law. Only those cases in which new syllabus points are written are designated as signed opinions; all others currently fall under the rubric of per curiam opinions.

Returning to the issue of whether per curiam decisions have precedential value, we must first address the statement contained in footnote four of *Lieving* that "everything in a per curiam opinion beyond the syllabus point is merely *obiter dicta.*" 188 W.Va. at 201, n. 4, 423 S.E.2d at 604 n. 4. Not only is that statement incorrect as a matter of law, but it also represents an improper understanding of the term "dicta." Dicta is defined by Black's Law Dictionary as:

> Opinions of a judge which do not embody the resolution or determination of the

---

**8.** Some of the instances when the high court routinely uses per curiam decisions include original jurisdiction cases, dismissals of appeals for want of a substantial federal question, moot cases, and certain mandamus cases. *See* Judicature, *supra,* at 30. Another category of cases in which the per curiam method of disposing of cases is used are those in which there is no briefing and no oral argument.

**9.** Similarly, this Court has adopted the practice of allowing concurring and dissenting opinions to be filed to a per curiam opinion.

**10.** While a number of states use or have used syllabi in their opinions (e.g. Georgia, Hawaii, Kansas, Louisiana, Minnesota, Nebraska, North Dakota, Ohio, Oklahoma, Pennsylvania, and Texas), those states do not have a constitutional obligation to include syllabus points. Several states impose this requirement by statute. *See, e.g.,* Kan. Stat. Ann. §§ 20–111; 20–203 (1995) ("A syllabus of the points of law decided in any case in the supreme court shall be stated in writing by the judge delivering the opinion of the

court"); N.D. Cent.Code § 27–03–09 (repealed 1977); Ohio Rev.Code Ann. § 2503.20 (Anderson 2001) ("Whenever a case is reported for publication, the syllabus of such case shall be prepared by the judge delivering the opinion, and approved by a majority of the members of the court").

**11.** The Dean of the West Virginia College of Law in 1940 commented that "the most compelling reason for the constitutional provision requiring the court to write a syllabus seems to have been to do away with the old practice whereunder the syllabus was prepared by the court reporter and therefore, not infrequently, did not accurately express the views of the court." Thomas P. Hardman, *" The Law'-In West Virginia,"* 47 W.Va. Law Quarterly 23, 29 (1940).

**12.** We refer to those decisions that are issued under a particular justice's name as "signed" opinions.

specific case before the court. Expressions in court's opinions which go beyond the facts before court and therefore are individual views of author of opinion and not binding in subsequent cases. *State ex rel. Foster v. Naftalin,* 246 Minn. 181, 74 N.W.2d 249.

Black's Law Dictionary 454 (6th ed.1990); *see* 20 Am.Jur.2d *Courts* § 39 (defining dicta as "expressions of opinion which are not necessary to support the decision reached by the court"). The phrase, "obiter dicta," [13] which translates "a remark by the way," is often shortened to just dicta and similarly references those comments or observations of a judge regarding a point that is incidental or collateral to the direct issue before the court or upon an analogous point introduced by way of illustration but not necessary to the determination of the instant case. *See* Black's Law Dictionary 1072 (6th ed.1990). In *Newman v. Kay,* 57 W.Va. 98, 49 S.E. 926 (1905) we observed that " '[o]biter dicta are such opinions uttered by the way, not upon the point or question pending, as if turning aside from the main topic of the case to collateral subjects.' " *Id.* at 112, 49 S.E. at 931 (quoting *Rohrbach v. Germania Ins. Co.,* 62 N.Y. 47, 58 (1875)).

▮ With reference to the statement made by former Justice Neely in footnote four of *Lieving* suggesting that the entirety of a per curiam opinion beyond the syllabus point is "obiter dictum," we strongly disagree. Only those statements included in a per curiam opinion that are not necessary to the decision reached in the case or those that are clearly beyond the legal points that are being resolved in an opinion qualify as "obiter dictum." Because a per curiam opinion involves application of settled law to facts necessarily different than those to which the law was previously applied, the per curiam decisions of this Court clearly have value to the bar and bench. Were we to view nothing but the

syllabus, which in a per curiam decision of this Court is simply those points of law previously decided in other cases, as worthy of precedential value, we would be discarding many valuable cases in which the presence of unique facts has required this Court to determine whether settled legal precepts applied to those distinct factual scenarios.

The value of per curiam opinions is well-established. One commentator recognized, in discussing the use of per curiam opinions by the United States Supreme Court, that the "value of any per curiam opinion . . . is in large measure a function of the quality of the opinion's legal reasoning" and further noted that such opinions " 'obviously are of precedential value.' " Note, Steven C. Sparling, *Cutting the Gordian Knot: Resolution of the Sentencing Dispute Over Dismissed Charges After United States v. Watts,* 6 Geo. Mason U.L.Rev. 1073, 1093–94 (1998) (quoting *Edelman v. Jordan,* 415 U.S. 651, 671, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)). In Ohio, a state which requires syllabus use by statute,[14] per curiam opinions are generally entitled to the same weight as the syllabus of a decision in stating the law. 23 Oh.Jur.3d *Courts and Judges* § 381 (1998); *see Truesdale v. Dallman,* 690 F.2d 76, 77 n. 1 (6th Cir.1982) (citing Syl. Pt. 6, *State ex rel. Canada v. Phillips,* 168 Ohio St. 191, 151 N.E.2d 722 (1958) which states that "[o]nly what is stated in a syllabus or in an opinion *per curiam* or by the court represents a pronouncement of law by this court"). Chief Justice McGraw recently voiced his opinion that given our constitutional provision that requires a majority of the justices to concur in a decision to give it binding effect,[15] it necessarily follows that any per curiam decision, because it represents the decision of a majority of the court, is "as much a part of the common law of this jurisdiction as any other opinion rendered by this Court." *Harmon v. Fayette County Bd. of Educ.,* 205

---

**13.** One definition of "obiter dictum" is "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." Black's Law Dictionary 1100 (7th ed.1999).

**14.** *See supra* note 10.

**15.** Our constitution provides: "No decision rendered by the court [of appeals] shall be considered as binding authority upon any court, except in the particular case decided, unless a majority of the justices of the court concur in such decision." W.Va. Const. art. VIII, § 4.

496

W.Va. 125, 138, n. 1, 516 S.E.2d 748, 761, n. 1 (1999) (McGraw, J., dissenting).

Appellee correctly observes in its brief that "[p]er curiam opinions provide examples of the Court's reasoning process" and "offer guidance on issues collateral to signed opinions." In explanation of why per curiam opinions constitute precedent, it has been posited: "Because every case has different facts, per curiam opinions of necessity will require the [Supreme] Court to apply established principles of law to the new sets of facts, [thereby] establishing new precedent in the process." George Castelle, *Reversals, Per Curiams, and the Common Law,* 12 West Virginia Lawyer 26, 28 (Aug. 1998). With both of these assertions, we agree.

Consistent with our longstanding practice, this Court will use signed opinions when new points of law[16] are announced and those points will be articulated through syllabus points as required by our state constitution. W.Va. Const. art. VIII, § 4. While per curiam opinions differ from signed opinions based on the absence of new syllabus points, per curiam opinions nonetheless have precedential value as an application of settled principles of law to facts necessarily differing from those at issue in signed opinions. The value of a per curiam opinion arises in part from the guidance such decisions can provide to the lower courts regarding the proper application of the syllabus points of law relied upon to reach decisions in those cases. Another purpose for which per curiams may be relied upon is to argue that previously announced principles of law remain valid, as applicable to a certain set of facts, due to their inclusion by this Court in per curiam opinions.[17] Per curiam opinions may also be relied upon to argue that previously announced points of law set forth in syllabus

points should nonetheless apply to alternate factual scenarios, which may significantly parallel but still partially diverge from the facts of the previously-decided opinion. Accordingly, a per curiam opinion may be cited in support of a legal argument. Therefore, we hereby renounce any prior statements of this Court to the effect that per curiam opinions are not legal precedent.

## C. Application of *Dalton*

Based on our conclusion that per curiam opinions clearly have precedential value, we affirm the decision of the lower court to apply *Dalton* to this case. We cannot step outside the parameters of appellate jurisprudence to weigh, as Appellant suggests, the relative equities present in *Hamric* against those present in this case.[18] Because *Dalton* was the law at the time the lower court issued its summary judgment ruling, there is no question that *Hamric* cannot be extended retroactively to permit Appellant to proceed under the principles announced in *Hamric.* While the result may appear harsh in this case, it would prove totally unworkable for this Court to try to carve exceptions to the applicability of issued rulings of this Court.[19] Moreover, we note that Appellant's suggestion that she was entitled to the holding of *Hamric* on the day she filed her cause of action is simply not true. The issue of whether *Hamric* was to be applied retroactively or prospectively was not determined until the issuance of the *Dalton* opinion. Thus, Appellant's argument that this Court took away a right that existed on the day she filed her lawsuit is simply not sustainable. The relevant law was that law in effect at the time of the summary judgment ruling-and that law was this Court's decision in *Dalton* which clarified that *Hamric* was not to be applied in a retroactive fashion.

16. We note that the only statement contained in footnote 4 of *Lieving* with which we wholeheartedly agree is the final sentence which provides that "if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion." 188 W.Va. at 201, n. 4, 423 S.E.2d at 604 n. 4.

17. This Court routinely indicates the continuing vitality of legal principles through its citation of

and reliance on per curiam decisions in its signed opinions.

18. Appellant argues that her case presents equally strong arguments for application of the no physical contact rule when compared to the facts of *Hamric.*

19. Were this Court to embark on such a course of action, we would surely be opening a proverbial Pandora's box.

Based on the foregoing, the decision of the Circuit Court of Fayette County is hereby affirmed.

Affirmed.

STARCHER, J., concurring in part and dissenting in part.

(Filed Nov. 1, 2001)

I concur with that portion of the majority's opinion which clarifies the application of *per curiam* opinions. A *per curiam* opinion is a vehicle whereby the Court applies existing, undisputed points of law to a particular set of facts—if the Court addresses a novel legal issue or otherwise intends to change the law, it will do so in a signed opinion, not a *per curiam* opinion.

The majority opinion has "cleared up" a matter that has for some time either been misunderstood or misstated by the Court with respect to how *per curiam* opinions are to be considered. The current language should be helpful to students of the law, lawyers, and judges, as well as other readers of our opinions from this time forward.

I dissent, however, to that portion of the majority's opinion which rejects the retroactive application of *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997). As Justice McGraw indicated in his dissent in *Dalton v. Doe*, 208 W.Va. 319, 540 S.E.2d 536 (2000)—a dissent in which I joined—*Hamric* did not mark a significant departure from previously settled law. I firmly believe, as with other cases involving statutory interpretation, that *Hamric* should have been applied retroactively by the circuit court in the instant case.

McGRAW, C.J., concurring in part and dissenting in part.

(Filed Jan. 11, 2002)

I continue to take issue with the Court's holding in *Dalton v. Doe*, 208 W.Va. 319, 540 S.E.2d 536 (2000), and therefore dissent to the result reached in this case. As I pointed out in my dissent to *Dalton*, there is no sound basis for concluding that *Hamric v. Doe*, 201 W.Va. 615, 499 S.E.2d 619 (1997), had the effect of overruling prior law, as "*Hamric* was the very first case in which this Court was required to address the ultimate reach of the 'physical contact' requirement contained in W. Va.Code § 33–6–31(e)(iii)." *Dalton*, 208 W.Va. at 324, 540 S.E.2d at 541 (McGraw, J., dissenting). Thus, *Hamric* should be applied retroactively, as is this Court's common practice where issues of statutory interpretation are resolved in the first instance. *Id.*

I agree, however, with the majority's stance concerning the precedential effect of this Court's per curiam opinions. Yet, it bears emphasizing that while syllabus point two of the majority opinion correctly states the general rule concerning the proper method of enunciating new points of law, the fact remains that matters of first impression are often resolved by this Court in its per curiam opinions, as when broad and undisputed principles of law are employed to decide more discrete legal issues. *E.g., State v. Euman*, 210 W.Va. 519, 558 S.E.2d 319 (2001) (per curiam) (holding that W. Va.Code § 17B–4–3(b) (1999) permits prosecution for driving while revoked for DUI based upon out-of-state license revocation); *Rogers v. Albert*, 208 W.Va. 473, 541 S.E.2d 563 (2000) (per curiam) (concluding that Rule 1(b) of the Administrative Rules for the Magistrate Courts of West Virginia does not facially violate constitutional right to prompt presentment); *Central West Virginia Reg'l Airport Auth. v. West Virginia Pub. Port Auth.*, 204 W.Va. 514, 513 S.E.2d 921 (1999) (per curiam) (holding that Central West Virginia Regional Airport Authority is not an "affected public agency" within the meaning of W. Va.Code § 17–16B–6(b)(15) (1996)).

As I explained in *Harmon v. Fayette County Bd. of Educ.*, 205 W.Va. 125, 516 S.E.2d 748 (1999), "while per curiam opinions are not necessarily definitive statements regarding the law of this jurisdiction, they are nevertheless part of the common law, and are certainly binding upon all of the lower courts absent a conflict with other controlling authority, or until expressly modified or overruled by this Court." *Id.* at 138 n. 1, 516 S.E.2d at 761 n. 1 (McGraw, J., dissenting). Significantly, Article VIII, § 4, ¶ 3 of the West Virginia Constitution, which requires the Court to write opinions in appellate

cases, makes no distinction between opinions rendered per curiam and those that are penned by individual members of the Court. Nor does a per curiam opinion's failure to formally include a newly-forged legal principle in its syllabus relegate such rule to the status of mere dictum. *See Miller v. Huntington & Ohio Bridge Co.*, 123 W.Va. 320, 329, 15 S.E.2d 687, 692 (1941) ("the ruling of the court ..., while not carried into the syllabus, is nevertheless law rather than *dicta*, if there be a distinction between the two"). Thus, a new point of law cannot be ignored based simply upon the fact that it was articulated in a per curiam opinion.